# Illinois Official Reports

## Supreme Court

---

### *People v. Hunter*, 2017 IL 121306

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. KEVIN HUNTER, Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DRASHUN WILSON, Appellant. |
| Docket Nos. | 121306, 121346 cons. |
| Filed | November 30, 2017 |
| Rehearing denied | January 16, 2018 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Evelyn B. Clay and the Hon. Thaddeus L. Wilson, Judges, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, State Appellate Defender, Patricia Mysza, Deputy Defender, and Katie Anderson and Meredith N. Baron, Assistant Appellate Defenders, of the Office of the State Appellate Defender, of Chicago, for appellants. |
| | Lisa Madigan, Attorney General, of Springfield (David L. Franklin, Solicitor General, and Michael M. Glick and Gopi Kashyap, Assistant Attorneys General, of Chicago, of counsel), for the People. |

Justices JUSTICE THEIS delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Freeman, Thomas, Kilbride, Garman, and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1      In these consolidated appeals we consider the temporal reach of two legislative enactments: (1) an amendment to section 5-130(1)(a) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/5-130 (West 2016)), which, *inter alia*, eliminated armed robbery while armed with a firearm and aggravated vehicular hijacking while armed with a firearm from the list of automatic transfer offenses, and (2) the new juvenile sentencing provisions codified in section 5-4.5-105 of the Unified Code of Corrections (Code) (730 ILCS 5/5-4.5-105 (West 2016)), which, *inter alia*, give the trial court discretion not to impose otherwise mandatory firearm sentencing enhancements. The appellate court rejected defendants' arguments for retroactive application of these statutes to their cases that were pending on direct review when the statutes became effective and affirmed defendants' convictions and sentences. *People v. Hunter*, 2016 IL App (1st) 141904, ¶¶ 62, 73; *People v. Wilson*, 2016 IL App (1st) 141500, ¶ 16. We affirm the judgments of the appellate court, albeit for different reasons.

¶ 2                                          BACKGROUND
¶ 3                                  No. 121306—*People v. Hunter*
¶ 4      In June 2011, the State charged defendant Kevin Hunter with aggravated vehicular hijacking (720 ILCS 5/18-4(a)(4) (West 2010)), aggravated kidnapping (720 ILCS 5/10-2(a)(6) (West 2010)), and armed robbery (720 ILCS 5/18-2(a)(2) (West 2010)), all while armed with a firearm. The charges arose out of an incident the previous month in which Hunter and two unidentified men robbed Steven Maxwell of personal property including his vehicle and kidnapped him, all at gunpoint. At the time of the offenses, Hunter was 16 years old.

¶ 5      The version of section 5-130(1)(a) of the Act then in effect provided as follows:

        "§ 5-130. Excluded jurisdiction.

        (1)(a) The definition of delinquent minor under Section 5-120 of this Article shall not apply to any minor who at the time of an offense was at least 15 years of age and who is charged with: (i) first degree murder, (ii) aggravated criminal sexual assault, (iii) aggravated battery with a firearm where the minor personally discharged a firearm ***, (iv) armed robbery when the armed robbery was committed with a firearm, or (v) aggravated vehicular hijacking when the hijacking was committed with a firearm.

        These charges and all other charges arising out of the same incident shall be prosecuted under the criminal laws of this State." 705 ILCS 405/5-130 (West 2010).

Pursuant to this statute, Hunter was tried in adult court.

¶ 6      Following a bench trial in the circuit court of Cook County, Hunter was convicted on all three counts. The trial court sentenced Hunter to 21 years on each count—the 6-year minimum for a Class X felony, plus the mandatory 15-year firearm enhancement—to be served

concurrently. See 720 ILCS 5/18-4(b) (West 2010); 720 ILCS 5/10-2(b) (West 2010); 720 ILCS 5/18-2(b) (West 2010); 730 ILCS 5/5-4.5-25(a) (West 2010). Hunter appealed.

¶ 7 While Hunter's case was pending in the appellate court, Public Acts 99-69 and 99-258 became effective.[1] Both Public Acts adopted new, identical sentencing provisions applicable to defendants under the age of 18 at the time of the commission of the offense. Pub. Act 99-69, § 10 (eff. Jan. 1, 2016) (adding 730 ILCS 5/5-4.5-105); Pub. Act 99-258, § 15 (eff. Jan. 1, 2016) (adding 730 ILCS 5/5-4.5-105). Subsection (b) of the new sentencing provisions directs that the court "may, in its discretion, decline to impose any otherwise applicable sentencing enhancement based upon firearm possession, possession with personal discharge, or possession with personal discharge that proximately causes great bodily harm, permanent disability, permanent disfigurement, or death to another person." 730 ILCS 5/5-4.5-105(b) (West 2016).

¶ 8 Public Act 99-258 also amended section 5-130(1)(a) of the Act, raising the age for automatic transfer to adult court from 15 years to 16 years and eliminating armed robbery while armed with a firearm and aggravated vehicular hijacking while armed with a firearm from the list of automatic transfer offenses. Pub. Act 99-258 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-130(1)(a)).

¶ 9 In supplemental briefing in the appellate court, Hunter argued that the amendment to the Code and the new sentencing provisions in the Act applied retroactively and that his case should be remanded for a discretionary transfer hearing, as well as a new sentencing hearing. The appellate court held that neither provision applied retroactively and rejected Hunter's other claims of error, thus affirming his convictions and sentence. *Hunter*, 2016 IL App (1st) 141904, ¶¶ 20, 22, 62, 73, 80. We allowed Hunter's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Mar. 15, 2016).

¶ 10 No. 121345—*People v. Wilson*

¶ 11 In October 2012, defendant Drashun Wilson was indicted for attempted first degree murder (720 ILCS 5/8-4(a) (West 2012)) and aggravated battery with a firearm (720 ILCS 5/12-3.05(e)(1) (West 2012)) in connection with the September 23, 2012, shooting of Floyd Fulton. At the time of the offenses and indictment, Wilson was 17 years old and, under the Act, was tried in adult court. See 705 ILCS 405/5-120 (West 2012). Following a jury trial in the circuit court of Cook County, Wilson was found guilty of both offenses. The jury also found that Wilson personally discharged a firearm that proximately caused great bodily harm to another person. After merging the aggravated battery conviction into the attempted murder conviction, the trial court sentenced Wilson to 31 years' imprisonment—the 6-year minimum for a Class X felony, plus the minimum mandatory 25-year firearm enhancement applicable where the defendant personally discharged a firearm that proximately caused great bodily harm. See 720 ILCS 5/8-4(c)(1)(D) (West 2012); 730 ILCS 5/5-4.5-25(a) (West 2012). Wilson appealed.

---

[1]Neither public act contains an effective date, but pursuant to the Effective Date of Laws Act (5 ILCS 75/0.01 *et seq.* (West 2014)), because the underlying bills were both "passed" prior to June 1, 2015 (see 5 ILCS 75/3 (West 2014)), the effective date for both public acts was January 1, 2016 (see 5 ILCS 75/1(a) (West 2014)). See also Ill. Const. 1970, art. IV, § 10 ("The General Assembly shall provide by law for a uniform effective date for laws passed prior to June 1 of a calendar year.").

¶ 12    While Wilson's case was pending in the appellate court, Public Acts 99-69 and 99-258 became effective. In supplemental briefing, Wilson argued that he was entitled to be resentenced under section 5-4.5-105(b) of the Code, under which the trial court could decline to impose the firearm enhancement. The appellate court held that section 5-4.5-105(b) applied prospectively only. *Wilson*, 2016 IL App (1st) 141500, ¶ 16. The appellate court rejected Wilson's other claims of error and affirmed his conviction and sentence. *Id.* ¶¶ 1, 28, 35, 43, 46-47.

¶ 13    We allowed Wilson's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Mar. 15, 2016)) and consolidated Wilson's and Hunter's appeals for review.

¶ 14                                    ANALYSIS

¶ 15    Whether the statutory amendments at issue here apply retroactively to defendants' cases presents an issue of statutory construction. As such, our review proceeds *de novo*. *People ex rel. Madigan v. J.T. Einoder, Inc.*, 2015 IL 117193, ¶ 27; *People v. Amigon*, 239 Ill. 2d 71, 84 (2010).

¶ 16                                       I

¶ 17    We consider first the amendment to section 5-130(1)(a) of the Act, enacted in Public Act 99-258. As noted above, the amendment changed the requirements for automatic transfer of a juvenile to adult court, by raising the minimum age from 15 years to 16 years and by eliminating armed robbery while armed with a firearm and aggravated vehicular hijacking while armed with a firearm from the list of automatic transfer offenses. Hunter was charged with both of these offenses. Relying on *People ex rel. Alvarez v. Howard*, 2016 IL 120729, Hunter argues that the amendment to section 5-130(1)(a) applies retroactively to his case, and because the offenses with which he was charged are no longer qualifying offenses for automatic transfer to adult court, he requests remand to the juvenile court for a discretionary transfer hearing but for purposes of sentencing only. Hunter does not challenge his conviction.

¶ 18    *Howard* was decided after we granted Hunter's petition for leave to appeal. There, we addressed the retroactivity of the amendment to section 5-130(1)(a) adopted in Public Act 99-258. Although *Howard* involved the change in the minimum age requirement for transfer to adult court, rather than the change in the list of automatic transfer offenses that is at issue here, both changes appear in the same section of the Act. Thus, *Howard* informs our analysis in this case.

¶ 19    In *Howard*, the defendant, who was 15 years old, was indicted on multiple offenses, including first degree murder. The charges against defendant were brought in adult court, pursuant to section 5-130(1)(a) of the Act (705 ILCS 405/5-130(1)(a) (West 2014)). *Howard*, 2016 IL 120729, ¶ 4. While the defendant's case was pending in the trial court, Public Act 99-258 became effective. The defendant argued that his case must proceed in juvenile court because he no longer met the minimum age requirement for transfer to adult court. The trial court agreed and transferred the cause to juvenile court. The State sought a writ of *mandamus* directing the trial court to rescind the transfer order. We denied the writ. *Howard*, 2016 IL 120729, ¶¶ 35-36.

¶ 20    In *Howard*, we reviewed the proper analysis courts must employ when determining the temporal reach of a statute. We noted that this court adopted the United States Supreme

Court's retroactivity analysis set forth in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). *Howard*, 2016 IL 120729, ¶ 19 (citing *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 36-39 (2001)). Under *Landgraf*, we first ask whether the legislature has clearly indicated the statute's temporal reach. If so, and assuming no constitutional prohibition, the legislature's intent will be given effect. *Howard*, 2016 IL 120729, ¶ 19. If the legislature's intent is not clear, then, under *Landgraf*, the court must determine whether the statute has a retroactive impact, *i.e.*, whether the statute "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." (Internal quotation marks omitted.) *Id.* (quoting *Commonwealth Edison*, 196 Ill. 2d at 38, quoting *Landgraf*, 511 U.S. at 280). "If there is no retroactive impact, the statutory amendment may be applied retroactively; if there is a retroactive impact, the court presumes that the legislature intended the amendment to be prospective only." *Id.*

¶ 21    *Howard* made plain, however, that based on section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2014)), Illinois courts need never go beyond the first step of the *Landgraf* analysis. *Howard*, 2016 IL 120729, ¶ 20. Section 4 of the Statute on Statutes, which has never been amended since its adoption in 1874 (see Ill. Rev. Stat. 1874, ch. 131, § 4 (Hurd 1874)) states:

> "No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding. If any penalty, forfeiture or punishment be mitigated by any provisions of a new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect. This section shall extend to all repeals, either by express words or by implication, whether the repeal is in the act making any new provision upon the same subject or in any other act." 5 ILCS 70/4 (West 2016).

¶ 22    As *Howard* explained, section 4 "is a general savings clause, which this court has interpreted as meaning that procedural changes to statutes will be applied retroactively, while substantive changes are prospective only." *Howard*, 2016 IL 120729, ¶ 20 (citing *People v. Glisson*, 202 Ill. 2d 499, 506-07 (2002)). Thus, if the temporal reach of the statute is not clearly indicated in its text, then the statute's temporal reach is provided by default in section 4 of the Statute on Statutes. *Id.*

¶ 23    Applying this analysis to Public Act 99-258, *Howard* noted that the portion of the public act amending section 5-130(1)(a) did not indicate its temporal reach, thus requiring resort to the default rule in section 4 of the Statute on Statutes. *Id.* ¶¶ 21, 28. We agreed with the parties that the amendment to section 5-130(1)(a), impacting whether a defendant is tried in juvenile or criminal court, is purely a matter of procedure and concluded that, in the absence of a constitutional impediment to retroactive application, the amendment applies to "pending cases," including the defendant's case. *Id.*

¶ 24    *Howard* rejected the State's argument that applying the amended statute to the defendant's case, which had been pending in adult court for three years, would run afoul of section 4's requirement that procedural changes only apply "so far as practicable" (5 ILCS 70/4 (West 2014)). *Howard*, 2016 IL 120729, ¶ 32. We observed that transferring the defendant's case to juvenile court for a transfer hearing "is something that is feasible." *Id.*

¶ 25    Hunter argues that, like *Howard*, his case was also "pending" on the effective date of the amendment, albeit on direct review in the appellate court. Hunter posits that because our retroactivity jurisprudence does not distinguish between cases pending in the trial court and cases pending on direct review when a statutory amendment becomes effective, *Howard* requires remand of his case to the juvenile court for a discretionary transfer hearing.

¶ 26    The State counters that this court's statement in *Howard* that the amendment applies retroactively to "pending cases" does not mean that it applies broadly to all nonfinal cases, *i.e.*, cases that are pending on direct review. The State argues that the amendment only applies retroactively to cases pending in criminal court that are capable of conforming to the new statute. The State maintains that applying the amendment to cases pending on direct review would result in an absurdity, requiring a remand in every such case where the legislature made an intervening change to a trial court procedure. The State further argues that even if the amendment applies retroactively to cases that were pending on direct review at the time the amendment became effective, remand to the juvenile court for a discretionary transfer hearing in this case is not practicable because Hunter, who is now 22 years old, has aged out of the juvenile court system.

¶ 27    We agree with Hunter that our retroactivity jurisprudence has not typically distinguished between cases that are pending in the trial court and cases pending in the appellate court on direct review at the time a statutory amendment becomes effective. The same retroactivity analysis that we employed in *Howard*, where the defendant's case was pending in the trial court when the amendment became effective, has also been employed by this court where the defendant's case was pending in the appellate court at the time the amendment became effective. See *Glisson*, 202 Ill. 2d at 508-09 (holding that the general savings clause of section 4 of the Statute on Statutes prohibited retroactive application of a substantive statutory amendment that went into effect while the defendant's case was pending on appeal); accord *People v. Atkins*, 217 Ill. 2d 66, 71-73 (2005) (holding that, under section 4 of the Statute on Statutes, a substantive amendment that became effective after the defendant was convicted and sentenced would not apply retroactively).

¶ 28    Our agreement with Hunter on this point, however, does not lead us to conclude that, pursuant to section 4 of the Statute on Statutes and our decision in *Howard*, remand for further proceedings is mandated in this case. The process of statutory construction requires more than mechanical application of a rule of law or a decision of this court. We have an obligation to construe statutes in a manner that will avoid absurd, unreasonable, or unjust results that the legislature could not have intended. *People ex rel. Alvarez v. Gaughan*, 2016 IL 120110, ¶ 19; *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, ¶ 39. As we recently observed, "the process of statutory construction should not be divorced from consideration of real-world results." *People v. Fort*, 2017 IL 118966, ¶ 35. Here, Hunter's construction of the amended statute would lead to real-world results that the legislature could not have intended.

¶ 29    We return to the *Howard* case, on which Hunter relies. Although we stated in *Howard* that the amendment to section 5-130(1)(a) of the Act applies to "pending cases" (*Howard*, 2016 IL 120729, ¶ 28), we did not elaborate as to what that term means in the context of applying the default rule of section 4 of the Statute on Statutes. Certainly, we were not asked in *Howard* to consider the retroactivity of a procedural statute where, as here, the case was pending in the appellate court, rather than the trial court, when the statute became effective.

¶ 30    We also observe that our application of section 4 in the *Howard* case began with this statement of the law: "Under section 4, substantive amendments may not be applied retroactively, but 'procedural law changes will apply to *ongoing proceedings*.' " (Emphasis added.) *Id.* (quoting *People v. Ziobro*, 242 Ill. 2d 34, 46 (2011) (citing section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2006)))). In *Howard*, the trial court proceedings had not yet been concluded. In a real-world sense those proceedings were "ongoing." Indeed, we framed the question in *Howard* as whether, given the statutory amendment, the defendant should "continue" to be prosecuted in adult court. *Id.* ¶ 31. Application of the Statute on Statutes' default rule meant that the amended statute, changing the requirements for automatic transfer to adult court, would apply retroactively to a pending case, *i.e.*, a case in which the trial court proceedings had begun under the old statute but had not yet been concluded.

¶ 31    *Howard* is consistent with the language of section 4 of the Statute on Statutes, which requires that "the proceedings *thereafter*"—after the enactment of the new procedural statute—"shall conform, so far as practicable, to the laws in force at the time of such proceeding." (Emphasis added.) 5 ILCS 70/4 (West 2016). Section 4 contemplates the existence of proceedings after the new or amended statute is effective to which the new procedure could apply. The phrase "ongoing proceedings," used by this court in *Ziobro* and *Howard*, conveys this idea. See also *People v. Zito*, 237 Ill. 434, 438 (1908) (under section 4, "what remained to be done" must conform to the mode of procedure under the new act).

¶ 32    In Hunter's case, however, the proceedings in the trial court were completed well before the statute was amended. No "ongoing proceedings" exist to which the amended statute could apply. Thus, in contrast to *Howard*, this is not a case where we must decide whether the defendant should "continue" to be prosecuted in adult court. This is also not a case where remand for further proceedings is necessitated by reversible error at trial. See *Ziobro*, 242 Ill. 2d at 45-46 (where, after reversing the trial court's dismissal of the criminal charges, we instructed that a new procedural statute would apply retroactively to the proceedings on remand). Although Hunter challenged the sufficiency of the evidence on direct review, the appellate court rejected that argument (*Hunter*, 2016 IL App (1st) 141904, ¶¶ 13-20), and Hunter does not press that claim, or any other claim of reversible error, in this court. Simply stated, there are no "proceedings thereafter" capable of "conform[ing]" to the amended statute. 5 ILCS 70/4 (West 2016). Nothing remains to be done.

¶ 33    Because Hunter's trial court proceedings have been concluded and no further trial court proceedings are necessitated by reversible error, applying the amended statute retroactively to Hunter's case would result in this court effectively creating new proceedings for the sole purpose of applying a procedural statute that postdates his trial and sentence. We have grave concerns about such a result.

¶ 34    The *Landgraf* opinion, from which our retroactivity jurisprudence sprang, speaks to this issue. There, the Supreme Court observed that procedural rules may often be applied in cases

that arose before the rule was enacted. *Landgraf*, 511 U.S. at 275. The Court, however, went on to note:

> "Of course, the mere fact that a new rule is procedural does not mean that it applies to every pending case. A new rule concerning the filing of complaints would not govern an action in which the complaint had already been properly filed under the old regime, and the promulgation of a new rule of evidence would not require an appellate remand for a new trial." *Id.* n.29.

¶ 35 Justice Scalia, in his concurrence, made a similar observation:

> "A new rule of evidence governing expert testimony, for example, is aimed at regulating the conduct of trial, and the event relevant to retroactivity of the rule is introduction of the testimony. Even though it is a procedural rule, it would unquestionably not be applied to *testimony already taken*—reversing a case on appeal, for example, because the new rule had not been applied at a trial which antedated the statute." (Emphasis in original.) *Id.* at 291-92 (Scalia, J., concurring, joined by Kennedy and Thomas, JJ.).

See also Michael S. Gilmore, *Application of Statutory Changes to Cases in Progress: The Crossroads of the Legislative and Judicial Power—An Analysis of Federal and Idaho Law*, 34 Idaho L. Rev. 517, 543 (1998) (reviewing Justice Scalia's concurrence in *Landgraf* and noting that if procedural rule changes were truly applied retroactively "there would be retrial of cases every time new statutes governing pleadings, appeals, and evidence" were adopted that "would lead to different results from the old statutes").

¶ 36 We recognize that our retroactivity jurisprudence, though flowing from *Landgraf*, was tempered by our construction of section 4 of the Statute on Statutes, and we presume that the General Assembly enacted Public Act 99-258 with knowledge of section 4 and this court's interpretation thereof. See *People v. Villa*, 2011 IL 110777, ¶ 36; *People v. Jones*, 214 Ill. 2d 187, 199 (2005). But in none of the several cases from this court on which Hunter relies did we remand a case to the trial court because "the new [procedural] rule had not been applied at a trial which antedated the statute." *Landgraf*, 511 U.S. at 291-92 (Scalia, J., concurring, joined by Kennedy and Thomas, JJ.). [2] Remand under such circumstances would create

---

[2]See *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 333-34 (2006) (holding that curative legislation, enacted while the case was on appeal to this court, and which validated the challenged tax levy, applied retroactively under the clear language of the statute); *Atkins*, 217 Ill. 2d at 71-73 (holding that a substantive amendment to the burglary statute, which became effective after the defendant was convicted and sentenced, would not apply retroactively); *Glisson*, 202 Ill. 2d at 509 (holding that substantive statutory amendment repealing the offense of which the defendant was convicted, which went into effect while the defendant's case was pending on appeal, would not apply retroactively); *People v. Digirolamo*, 179 Ill. 2d 24, 49-51 (1997) (holding that an amendment to the venue statute, which became effective after the trial proceedings concluded, would not apply retroactively because the amendment effected a substantive change in the law); *Johnson v. Edgar*, 176 Ill. 2d 499, 521-22 (1997) (holding that curative legislation, enacted while the case was pending on appeal, would apply retroactively pursuant to the statute's express language); *People v. Kellick*, 102 Ill. 2d 162, 181 (1984) (holding that the legislative history of a statute changing the death penalty eligibility requirements, that became effective five days after the defendant was sentenced, indicated the legislature's intent that the statute operate retroactively to a date that was 15 days prior to the commission of the murder, requiring vacatur of the defendant's death sentence).

inconvenience and a waste of judicial resources—a real-world result that the General Assembly could not have intended. Accordingly, we will not apply the amended statute retroactively to Hunter's case.

¶ 37    We reject Hunter's argument for retroactive application for the further reason that new procedural rules only apply to ongoing proceedings "so far as practicable." 5 ILCS 70/4 (West 2016). We agree with the State that, under the facts of this case, application of the amended statute is not practicable.

¶ 38    *Howard* equated what is "practicable" to what is "feasible" and concluded in that case that transfer to the juvenile court for a transfer hearing was feasible, even if not convenient. *Howard*, 2016 IL 120729, ¶ 32. At the time of our decision in *Howard*, the defendant was 19 years old[3] and still subject to the jurisdiction of the juvenile court. See *People v. Fiveash*, 2015 IL 117669, ¶¶ 14-16 (scope of the Act is limited to persons under the age of 21, and therefore, the juvenile court had no authority over the 23-year-old defendant). Hunter is now 22 years old. A discretionary transfer hearing in the juvenile court is no longer feasible because the juvenile court may not exercise jurisdiction over Hunter. *Id.*

¶ 39    We disagree with Hunter that, pursuant to *Fort*, 2017 IL 118966, and *People v. Brown*, 225 Ill. 2d 188 (2007), retroactive application of the amendment to section 5-130(1)(a) is yet feasible, despite his age.

¶ 40    In *Fort*, the juvenile defendant was tried in adult court for first degree murder, an automatic transfer offense, but convicted of second degree murder, which is not an automatic transfer offense. We held that plain error occurred when the trial court sentenced the defendant as an adult under the Unified Code of Corrections without the State first filing a motion requesting adult sentencing, as required by the Act (705 ILCS 405/5-130(1)(c)(ii) (West 2008)). *Fort*, 2017 IL 118966, ¶¶ 30-31. We determined that the appropriate remedy was to vacate the defendant's sentence and remand the matter to the trial court where the State would have the opportunity to file an appropriate motion for adult sentencing. *Id.* ¶ 41. We noted: "Should the trial court find after the hearing that defendant is not subject to adult sentencing, the proper remedy is to discharge the proceedings against defendant since he is now over 21 years of age and is no longer eligible to be committed as a juvenile under the Act." *Id.*

¶ 41    In contrast to *Fort*, where the case was remanded to adult court to allow the State to file a motion in that court requesting adult sentencing, Hunter seeks remand for a discretionary transfer hearing, which, he acknowledges, proceeds in the juvenile court. See 705 ILCS 405/5-805(3)(a) (West 2016). But as already noted, Hunter, who is 22 years old, is no longer subject to the jurisdiction of the juvenile court.

¶ 42    In *Brown*, on which Hunter also relies, the juvenile defendant was tried and convicted in adult court for attempted murder. Several years later, he filed a successive postconviction petition challenging his conviction because the statute under which his case had been transferred to adult court was found unconstitutional. We held that, because the statute was unconstitutional and void *ab initio,* the defendant's transfer to adult court based on that statute was also void and the defendant was thus entitled to a new transfer hearing. *Brown*, 225 Ill. 2d at 199. Although the defendant would have been 25 or 26 years old at the time we remanded

---

[3]The defendant was born on September 4, 1997 (*Howard*, 2016 IL 120729, ¶ 4), and our opinion was filed December 1, 2016.

the matter to the circuit court,[4] the State apparently made no argument challenging the remand based on the defendant's age. *Brown*'s silence on an issue that was not raised does not lend support to Hunter's position here that a remand to the juvenile court for a discretionary transfer hearing is feasible, notwithstanding that the juvenile court cannot exercise jurisdiction over a 22-year-old defendant.

¶ 43    In sum, because the amendment to section 5-130(1)(a) of the Act did not become effective until after Hunter's trial court proceedings were concluded and his case was pending in the appellate court; because no reversible error necessitates remand for further proceedings to which the amended statute could apply; and because Hunter, in any event, is no longer subject to the jurisdiction of the juvenile court, making remand impracticable, we hold that the amendment to section 5-130(1)(a) of the Act does not apply retroactively to Hunter's case.

¶ 44                                                II

¶ 45    We next consider the new juvenile sentencing provisions in the Code, enacted in Public Acts 99-69 and 99-258. Both public acts enacted identical provisions titled "SENTENCING OF INDIVIDUALS UNDER THE AGE OF 18 AT THE TIME OF THE COMMISSION OF AN OFFENSE." Pub. Act 99-69, § 10 (eff. Jan. 1, 2016) (adding 730 ILCS 5/5-4.5-105); Pub. Act 99-258, § 15 (eff. Jan. 1, 2016) (also adding 730 ILCS 5/5-4.5-105). The new provisions state in relevant part:

> "(a) On or after the effective date of this amendatory Act of the 99th General Assembly, when a person commits an offense and the person is under 18 years of age at the time of the commission of the offense, the court, at the sentencing hearing conducted under Section 5-4-1, shall consider the following additional factors [enumerated 1 through 9] in mitigation in determining the appropriate sentence:
>
> * * *
>
> (b) Except as provided in subsection (c), the court may sentence the defendant to any disposition authorized for the class of the offense of which he or she was found guilty as described in Article 4.5 of this Code, and may, in its discretion, decline to impose any otherwise applicable sentencing enhancement based upon firearm possession, possession with personal discharge, or possession with personal discharge that proximately causes great bodily harm, permanent disability, permanent disfigurement, or death to another person." 730 ILCS 5/5-4.5-105 (West 2016).

¶ 46    Section 5-4.5-105 of the Code became effective while defendants' cases were pending in the appellate court on direct review. In each case, the appellate court rejected the defendant's argument that subsection (b), which gives the court discretion not to impose otherwise mandatory firearm enhancements, applies retroactively to his case. *Hunter*, 2016 IL App (1st) 141904, ¶ 43; *Wilson*, 2016 IL App (1st) 141500, ¶ 16. In Hunter's case, the appellate court held that the legislature clearly indicated in subsection (a) that the new provisions apply to sentencing hearings " '[o]n or after the effective date' " of the statute, January 1, 2016. *Hunter*, 2016 IL App (1st) 141904, ¶ 43. In Wilson's case, the appellate court also relied on the language in subsection (a), holding that a sentencing court's consideration of the additional

---

[4]The defendant was 16 in 1997 at the time of the offense (*Brown*, 225 Ill. 2d at 192), and our opinion in *Brown* was filed in 2007.

mitigating factors set forth in subsection (a) and the sentencing court's discretion not to impose a firearm enhancement as set forth in subsection (b) may be exercised only when an individual that is under 18 years of age commits an offense on or after the effective date of the statute—January 1, 2016. *Wilson*, 2016 IL App (1st) 141500, ¶ 16.

¶ 47     Defendants argue that the appellate court erred in applying the language in subsection (a), which limits its temporal reach, to subsection (b). According to defendants, the legislature's decision to omit such limiting language from subsection (b) means that the legislature intended subsection (b) to apply retroactively. The State counters that section 5-4.5-105 establishes a comprehensive sentencing scheme, and that the legislature's expression of temporal reach in subsection (a) applies to the entire scheme.

¶ 48     Under our well-settled rules of statutory construction, "where the legislature includes particular language in one section of a statute but omits it in another section of the same statute, courts will presume that the legislature acted intentionally in the exclusion or inclusion" (*People v. Smith*, 2016 IL 119659, ¶ 30) and that the legislature intended different results (*In re K.C.*, 186 Ill. 2d 542, 549-50 (1999)). Here, the fact that the legislature included language in subsection (a) limiting its temporal reach but omitted such language in subsection (b) is indicative that the legislature intended different results and that the limiting language in subsection (a) applies only to that subsection. Thus, only the trial court's obligation set forth in subsection (a) to consider additional factors in mitigation at sentencing is controlled by the limiting language in that same subsection.

¶ 49     Had the legislature intended all of the new sentencing provisions to have the same temporal reach as the provisions in subsection (a), the legislature could have included the limiting language in a separate subsection so stating, as it did in connection with another amendment adopted as part of the same public act. See Pub. Act 99-258, § 5 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-805, adding 705 ILCS 405/5-805(7) ( "[t]he changes made to this Section *** apply to a minor who has been taken into custody on or after the effective date of this amendatory Act")). The legislature, however, did not do so with respect to the new juvenile sentencing provisions.

¶ 50     The legislature also could have preceded all of the subsections of the new statute with a statement indicating that all of the new provisions have the same temporal reach, as it did when it added another new section to the Act. See Pub. Act 99-258, § 5 (eff. Jan. 1, 2016) (adding 705 ILCS 405/5-822 (providing, prior to the numbered paragraphs, for data collection to commence "[o]n the effective date of this amendatory Act of the 99th General Assembly")). The legislature did not do so.

¶ 51     We presume that the legislature acted intentionally when it included the limiting language in subsection (a) but omitted that same language in subsection (b), and we therefore agree with defendants that the appellate court erred in applying the language in subsection (a) to subsection (b). That said, we disagree with defendants that the omission of that language in subsection (b) means that the legislature must have intended that subsection (b) apply retroactively to cases that were pending on direct review when the statute became effective. Just as we will not read the limiting language of subsection (a) into subsection (b), neither will we inject into the statute an unexpressed provision requiring retroactive application of subsection (b). See *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 26 (2005)

(courts may not, in the guise of statutory construction, annex new provisions not expressed by the legislature).

¶ 52    Because the statute is silent as to the temporal reach of subsection (b), we once again refer to section 4 of the Statute on Statutes. Although the parties dispute whether subsection (b) is properly labeled "procedural" or "substantive," we need not decide that issue. Rather, we agree with the State that, under section 4, subsection (b) of the new statute cannot apply to Hunter and Wilson, who were sentenced before the statute took effect.

¶ 53    The second sentence of section 4 of the Statute on Statutes expressly provides:

> "If any penalty, forfeiture or punishment be mitigated by any provisions of a new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect." 5 ILCS 70/4 (West 2016).

¶ 54    In *People v. Hansen*, 28 Ill. 2d 322, 340-41 (1963), we held that the defendant was not entitled to be resentenced under the new criminal code, which went into effect just 13 days after he was sentenced, because, under section 4, "a punishment mitigated by a new law is applicable only to judgments after the new law takes effect." Similarly, in *People v. Bradford*, 106 Ill. 2d 492, 504 (1985), we held that, under section 4, the defendant was not eligible to be sentenced under a statutory amendment that became effective while his case was pending in this court because he had already been sentenced prior to the statute's effective date. Where, however, a defendant's sentence is vacated on appeal and the matter remanded for resentencing, under section 4 of the Statute on Statutes, the defendant may elect to be sentenced under the law in effect at the time of the new sentencing hearing. *People v. Reyes*, 2016 IL 119271, ¶ 12 (*per curiam*) (vacating the defendant's sentence as unconstitutional and remanding to the trial court where, pursuant to section 4 of the Statute on Statutes, the defendant was entitled to be resentenced under the new juvenile sentencing provisions).

¶ 55    Here, no dispute exists that defendants were sentenced well before the new juvenile sentencing provisions, including subsection (b), became effective on January 1, 2016.[5] Further, defendants make no claim that error occurred in the trial court that would require vacatur of their sentences and remand for resentencing, thus giving them the option to be sentenced under subsection (b).

¶ 56    Defendants' sole argument against applying the second sentence of section 4 in the present case is that subsection (b) of the new statute does not mitigate punishment. We disagree. To "mitigate" means "to make less severe." Webster's Third New International Dictionary 1447 (1993); see Black's Law Dictionary 1154 (10th ed. 2014). Subsection (b) provides that the trial court "may, in its discretion, decline to impose any other applicable [firearm] sentencing enhancement." 730 ILCS 5/5-4.5-105(b) (West 2016). Thus, in the case of Hunter, who was found guilty of aggravated vehicular hijacking, aggravated kidnapping, and armed robbery, all while armed with a firearm, application of subsection (b) would mean that the low end of the sentencing range would be reduced from 21 years (the 6-year minimum sentence for a Class X felony, plus the mandatory 15-year firearm enhancement) to 6 years (the minimum unenhanced sentence for a Class X felony). In the case of Wilson, who was found guilty of attempted first degree murder where he personally discharged a firearm that proximately caused great bodily harm, application of subsection (b) would mean that the low end of the

---

[5]Hunter was sentenced on May 29, 2014. Wilson was sentenced on May 2, 2014.

sentencing range would be reduced from 31 years (the 6-year minimum sentence for a Class X felony, plus the mandatory 25-year minimum firearm enhancement) to 6 years (the minimum unenhanced sentence for a Class X felony). We conclude that subsection (b) of the new juvenile sentencing provisions mitigates punishment because the potential sentence is "less severe" than under the prior sentencing scheme. Accordingly, defendants are not eligible to be sentenced under subsection (b). The appellate court came to the correct conclusions, but for the wrong reasons.

¶ 57                                      CONCLUSION

¶ 58        For the reasons discussed above, we affirm the judgments of the appellate court.

¶ 59        Affirmed.