2020 IL App (1st) 192185-U

No. 1-19-2185

Order filed December 29, 2020.

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | 2013 CR 0475901 |
| | ) | |
| MARKESE DICKERSON, | ) | The Honorable |
| | ) | Dennis J. Porter, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

ORDER

¶ 1     *Held*: The trial court's summary dismissal of defendant's postconviction petition was affirmed where defendant could not demonstrate that his sentence was unconstitutional, could not show that trial counsel was ineffective at sentencing and could not challenge a statutorily unauthorized sentence at this juncture.

¶ 2     Defendant Markese Dickerson appeals from the trial court's summary dismissal of his

petition filed under the Post-Conviction Hearing Act (Act) (722 ILCS 5/122-1 *et seq.* (West

2018)). On appeal, defendant asserts that dismissal was improper because his 26-year sentence

violated the eighth amendment to the United States Constitution (U.S. Const., amend. VIII), as well as the Illinois Constitution's proportionate penalties clause (Ill. Const. 1970, art. I, §11). We affirm the trial court's judgment.

¶ 3                                             I. Background

¶ 4      At defendant's bench trial, the evidence generally showed that at approximately midnight on February 2, 2013, Roger Trice was walking home from work in the 4600 block of Woodlawn Avenue when he noticed three men on the opposite side of the street. One of the men, who Trice identified as defendant, crossed the street and pointed a gun a Trice's head, telling him to look away. A second man approached from behind Trice and took his phone, keys and blue iPod Touch. Defendant and the second man ran back across the street. As all three men were running away, defendant turned around and shot Trice in the foot.

¶ 5      The police subsequently followed footprints in the snow to the door of 1246 E. 46th Street, where they found defendant as well as the stolen iPod. Defendant testified on his own behalf that a friend lived at the address where he was found. He had been there the entire day leading up to his encounter with the police.

¶ 6      The trial court found that defendant was guilty of armed robbery and personally discharged a firearm during the offense. 720 ILCS 5/18-2(a)(3) (West 2012). The court also found defendant guilty of aggravated battery with a firearm (720 ILCS 5/12-3.05(e)(l) (West 2012)). In reaching those conclusions, the court found that the victim's testimony identifying defendant as the individual with the gun was corroborated by the footprints leading to a house where robbery proceeds and defendant were found.

¶ 7      At the sentencing hearing, the trial court acknowledged the presentence investigation report (PSI). According to the PSI, defendant was born on June 11, 1996. Thus, he was 16 years

old when he committed the offense. He had no prior convictions or adjudications of juvenile delinquency. Additionally, the PSI stated that defendant was in the tenth grade at the time of his arrest, was an average student and maintained good relationships with his teachers and classmates. Defendant's father died when defendant was four years old and his mother, a bank clerk, had three other children. Defendant described his childhood as normal and denied any abuse or family history of criminality or gang affiliation. While defendant denied that he was affiliated with a gang, the police were under the impression that he was affiliated with the Gangster Disciples.

¶ 8       In aggravation, the State argued that it was not enough for defendant to rob Trice of the money he had earned working that night, so defendant shot him, breaking his toe and injuring his foot. The State argued that defendant's act of shooting the victim was unnecessary and showed extreme callousness. The State also noted that a mandatory firearm enhancement applied.

¶ 9       Although the trial court had already found defendant personally discharged a firearm during the offense, defense counsel argued it was unclear whether defendant or his accomplices fired the weapon. Counsel also argued that no evidence showed defendant demonstrated "a willful wanton disregard for anyone's safety or any sort of particular bad faith on [defendant's] part." According to counsel, defendant did not intend "to hurt anyone or to do anything bad." Additionally, defendant had no criminal background, was only 19 years old as of sentencing and was a good student before this incident. Defense counsel urged the court to impose "the absolute minimum possible."

¶ 10      At sentencing, the trial court acknowledged that defendant had no criminal record, did not use drugs and had family members who were concerned about him. The court stated:

"So, having considered the nature of the offense, the character and the background, the arguments of counsel and presentence investigation, normally I would say because the individual is injured, [there] would not be a grounds for a minimum sentence; however, the minimum sentence for this offense is quite severe. I think given the fact that you don't have any prior record, I think the minimum sentence is warranted."

The court sentenced defendant to 6 years in prison for armed robbery and an additional 20-year enhancement for personally discharging a firearm (720 ILCS 5/18-2(b) (West 2012)). Apparently responding to defense counsel's argument, the court stated that it was "not clear who fired the weapon," but found a weapon was clearly fired. The court imposed a concurrent five-year prison term for aggravated battery with a firearm. Furthermore, the court subsequently denied defendant's motion to reconsider his sentence.

¶ 11    On direct appeal, defendant asserted that the evidence was insufficient to sustain his convictions. He also contended that the State failed to prove he personally discharged a firearm, which required the firearm enhancement to be reduced and warranted remanding this matter for resentencing under the Juvenile Court Act (705 ILCS 405/5-130(l)(a) (West 2016)). He added that on remand, the trial court would have discretion to forgo imposing a firearm enhancement pursuant to the newly enacted section 5-4.5-105 of the Code of Corrections (730 ILCS 5/5-4.5-105 (West 2016)). We rejected these contentions but agreed with his assertion that the fines and fees order required modification. *People v. Dickerson*, 2018 IL App (1st) 152587-U.

¶ 12    In affirming the sufficiency of the evidence to sustain the trial court's finding that defendant personally discharged a firearm, we rejected the defendant's contention that the trial court clarified its factual findings at trial by stating at sentencing that it was unclear who had fired the weapon. In light of that determination, we declined to reduce his firearm sentencing

enhancement. We also rejected defendant's contention that we should remand for resentencing under section 5-4.5-105, as our supreme court had recently determined that statute did not apply to defendants sentenced before January 1, 2016, as was the case here. *People v. Hunter,* 2017 IL 121306, ¶ 55.

¶ 13    Defendant subsequently filed a petition for postconviction relief. The parties have not identified the page in the record where the petition may be found, however. See *People v. Carrion*, 2020 IL App (1st) 171001, ¶ 34 (noting that where the appellant does not meet his burden of providing a complete record on appeal, we resolve any doubts arising from the incomplete record against the appellant).

¶ 14    On August 20, 2019, the trial court summarily dismissed defendant's petition as frivolous and patently without merit. According to the court, the petition raised only two claims. Specifically, the petition asserted that the 20-year firearm enhancement was unconstitutional under Illinois' proportionate penalties clause (Ill. Const. 1970, Art. I, § 11), as applied to defendant, and that section 5-4.5-105 "should apply retroactively to him because reversible error occurred at his original sentencing that requires vacatur of his sentence."

¶ 15    The trial court found the firearm enhancement was constitutional and that the matter was barred by *res judicata* to the extent that defendant challenged his firearm enhancement on direct appeal. See *People v. Ligon*, 239 Ill. 2d 94, 103 (2010). Additionally, trial counsel was not ineffective for failing to argue that the trial court had discretion to ignore the firearm enhancement in light of defendant's age because the reviewing court held that section 5-4.5-105 did not apply to defendant. Trial counsel was not required to predict that the law would change. Furthermore, defendant could have raised the issue on direct appeal. Finally, the court found

defendant could not challenge his five-year sentence for aggravated battery as void. Defendant now appeals.

¶ 16                                    II. Analysis

¶ 17    The Act provides a means for criminal defendants to assert that their constitutional rights were substantially violated. *People v. Buffer*, 2019 IL 122327, ¶ 12. Additionally, a petition may be summarily dismissed as frivolous or patently without merit where it lacks an arguable basis in law or fact. *People v. Tate*, 2012 IL 112214, ¶ 9. We review the trial court's summary dismissal of a postconviction petition *de novo*. *Buffer*, 2019 IL 122327, ¶ 12.

¶ 18    On appeal, defendant first asserts that the imposition of a 26-year sentence violated his rights under the eighth amendment and the proportionate penalties clause. He contends that "[t]he sentencing hearing and resulting 26-year mandatory minimum sentence was like a rubber stamp where the defense attorney and the trial court operated under the assumption that the law only allowed for a 26 year prison sentence and therefore the trial court never gave any consideration to defendant's age, impetuosity, lack of maturity, or rehabilitative potential."

¶ 19    First, defendant's as-applied challenge under the eighth amendment, raised for the first time on appeal, is forfeited. The State asserts, and defendant does not dispute, that he did not allege an eighth amendment claim in his petition. *People v. Thompson*, 2015 IL 118151, ¶¶ 27, 39 (finding that a defendant forfeits an as-applied constitutional challenge by raising it for the first time on appeal). Forfeiture aside, we would nonetheless find that defendant's contention on appeal lacks an arguable basis in law or fact.

¶ 20    The eighth amendment prohibits "cruel and unusual punishments." *Buffer*, 2019 IL 122327, ¶ 15 (quoting U.S. Const., amend. VIII). This includes disproportionate punishments. *People v. Lusby*, 2020 IL 124046, ¶ 32. Additionally, the United States Supreme Court has

determined that "children are constitutionally different from adults for purposes of sentencing.'" *Id*. (quoting *Miller v. Alabama*, 567 U.S. 460, 471 (2012)) (good to go)).

¶ 21    As recognized in *Miller*, juveniles lack maturity and a developed sense of responsibility, engage in impulsive reckless behavior, are particularly vulnerable to negative influences, have limited control over their environment, and lack the ability extricate themselves from settings prone to produce crime. *Buffer*, 2019 IL 122327, ¶ 16. They possess, however, a greater capability to change. *Id*. Consequently, their actions are less likely to reflect irretrievable depravity. *Id*. Given these special attributes, the Court has determined that the eighth amendment prohibits capital sentences and mandatory life sentences for juvenile offenders. *Id.* Even discretionary life sentences require the sentencing court to consider characteristics attending youth. *Id.*

¶ 22    "Therefore, to prevail on a claim based on *Miller* and its progeny, a defendant sentenced for an offense committed while a juvenile must show that (1) the defendant was subject to a life sentence, mandatory or discretionary, natural or *de facto*, and (2) the sentencing court failed to consider youth and its attendant characteristics in imposing the sentence." *Id.* ¶ 27.

¶ 23    Here, defendant's 26-year sentence clearly does not amount to a *de facto* life sentence. *Buffer*, 2019 IL 122327, ¶ 40 (drawing the line at 40 years); *People v. Woods*, 2020 IL App (1st) 163031, ¶ 57 (stating that the defendant's 33-year prison term did not raise constitutional concerns). We also note that according to the Illinois Department of Corrections website, defendant's projected discharge date is August 4, 2028. *People v. Lindsey*, 2016 IL App (1st) 141067, ¶ 28 (observing that reviewing courts may take judicial notice of information on the Illinois Department of Corrections website). Accordingly, defendant cannot establish an eighth amendment violation.

¶ 24    We also find that defendant's sentence did not violate the proportionate penalties clause. That clause provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. To that end, a sentence violates this clause where it is disproportionate to the offense so as to shock the moral sense of the community. *People v. Gomez*, 2020 Il App (1st) 173016, ¶ 30. Because our concepts of decency and fairness evolve as society evolves, our supreme court has never defined what constitutes a disproportionate sentence. *Id*. A reviewing court must consider the objective facts in light of the community's evolving standards of moral decency to determine whether a sentence shocks the community's moral sense. *Woods*, 2020 IL App (1st) 163031, ¶ 55.

¶ 25    Here, defendant urges us to find that the proportionate penalties clause requires a trial court to consider the same characteristics of youth that are relevant under the eighth amendment. Yet, this would not assist defendant, as this these proceedings were not the "rubber stamp" defendant suggests. On the contrary, the trial court had, and considered a great deal of information relevant to those characteristics.

¶ 26    We note that recently, the Illinois Supreme Court clarified in the context of the eighth amendment that reviewing courts must examine proceedings to ensure that the trial court made an informed decision, considering the totality of circumstances, before determining that the defendant was incorrigible and that a life sentence was warranted. *Lusby*, 2020 IL 124046, ¶ 35. In rejecting the defendant's assertion "that the trial court made only a generalized statement about the poor judgment of adolescents" and considered virtually no information about him as a unique individual," the court reviewed what information was before the trial court, including the evidence presented at trial, the PSI's contents, other evidence presented at sentencing, the

parties' arguments at sentencing and the defendant's statement in allocution. *Id.* ¶¶ 31, 36-49, 52. We find a similar approach is warranted here.

¶ 27    First, the trial court acknowledged the PSI, which showed that defendant was only 16 years old at the time of the offense, came from a seemingly stable family, was a decent student and had no criminal background. Thus, the court knew this was an anomalous offense and may very well have resulted from impulsive behavior. The same facts would have also apprised the court of defendant's rehabilitative potential. Additionally, the court was aware that while defendant denied gang affiliation, the police were under the impression that he was affiliated with the Gangster Disciples. Such affiliation would certainly suggest negative influences and a lack of control over his environment, not to mention a potential lack of ability to extricate himself from crime producing settings. Moreover, in imposing the minimum sentence authorized by statute, the court clearly found defendant was not irretrievably depraved.

¶ 28    Yet, defendant chose to brandish a weapon and steal property from a victim who was walking alone. While the offense could have ended there, defendant engaged in a gratuitous act of violence by shooting the victim in the foot, notwithstanding that the victim had been completely compliant. Additionally, the court expressly stated that it had considered the nature of the offense and that the victim was injured. Defendant made no statement in allocution. *Cf. People v. Barnes*, 2018 IL App (5th) 140378, ¶¶ 25-26 (finding the mandatory 15-year firearm enhancement prevented the trial court from taking in to account the defendant's criminal history and rehabilitative potential where he had no criminal history, did not physically harm anyone, brandished an unloaded weapon, expressed remorse, empathized with the victim and took responsibility for his actions); *People v. Aikens*, 2016 IL App (1st) 133578, ¶¶ 1, 9 28, 37 (finding the defendant's mandatory 40-year term, which included a mandatory 20-year

enhancement, violated the proportionate penalties clause where no one was injured, the defendant had no criminal history, he had been physically and sexually abused, a mitigation specialist described him as being full of rehabilitative potential and the trial court found he was sentencing the defendant to "an unimaginable amount of time especially for a teenage child").

¶ 29 Defendant is projected to be released to mandatory supervised release in August 2025, and as stated, entirely discharged from the IDOC's custody in August 2028, at age 32. Thus, he will be released from prison less than 15 years after the offense occurred and with decades ahead of him. This does not shock the moral sense of the community, notwithstanding the trial court's finding that the minimum sentence for the offense is quite severe.

¶ 30 Defendant nonetheless suggests that the enactment of section 5-4.5-105 shows society's evolving standards of moral decency are categorically inconsistent with mandatory firearm enhancements for juveniles. Indeed, other panels of this court have recognized that society's standards are evolving with respect to juvenile sentencing. See *Aikens*, 2016 IL App (1st) 133578, ¶ 38 (finding that although 5-4.5-105 did not apply retroactively, its enactment showed that society's standards were evolving and that our moral compass was changing with respect to sentencing juveniles as adults); see also *Barnes*, 2018 IL App (5th) 140378, ¶ 26 (finding that "the law has evolved to afford the trial court discretion as to whether the enhancement should be imposed" and that it was clear "that the moral compass is changing with regard to juveniles in the justice system"). That being said, another panel of this court has more recently determined with respect to section 5-4.5-105 that "there is no indication the General Assembly found that application of the mandatory firearm enhancements to juvenile defendants shocked our sense of moral decency." *Woods*, 2020 IL App (1st) 163031, ¶¶ 61-62. The reviewing court found the legislature clearly believed a mandatory firearm enhancement could be appropriate in a given

case because it did not entirely eliminate the application of mandatory firearm enhancements to juveniles and did not make the statute retroactive. *Id.* ¶ 62. We find *Woods* to be well reasoned. Accordingly, defendant cannot show that his sentence was unconstitutional merely because it included a mandatory firearm enhancement.

¶ 31 Next, we reject defendant's assertion that trial counsel was ineffective for failing to argue at sentencing that the court had discretion to disregard the firearm enhancement. First, we note that defendant could have raised this issue on direct appeal and, consequently, the matter is forfeited. *People v. Veach*, 2017 IL 120649, ¶ 47 (observing that defendants generally must raise a constitutional ineffective assistance of trial counsel claim on direct review or face forfeiture, unless the claim is based on facts outside the record).

¶ 32 A criminal defendant has a constitutional right to the effective assistance of trial counsel. *People v. Gayden*, 2020 IL 123505, ¶ 27. To demonstrate that counsel was ineffective, a defendant must demonstrate both that counsel's performance was deficient, falling below an objective standard of reasonableness, and that prejudice occurred in that the result of that proceeding would have been different absent counsel's deficiency. *Id.*

¶ 33 Here, defendant was sentenced well before section 5-4.5-105 took effect. Thus, counsel cannot have been deficient for failing to inform the trial court that this statute gave it discretion to ignore the mandatory firearm enhancement.

¶ 34 Defendant nonetheless states that this statute "did not fall from the sky. There was already precedent that the firearm enhancements were not mandatory for juvenile offenders who were automatically transferred." Yet, defendant cites no precedent that would have assisted trial counsel in this case. Accordingly, defendant cannot demonstrate that trial counsel was ineffective in this regard.

¶ 35    Finally, defendant asserts that aggravated battery with a firearm is a Class X felony (720 ILCS 5/12-3.05(e)(1), (h) (West 2012)), subject to a sentence of between 6 and 30 years in prison (730 ILCS 5/5-4.5-25 (West 2012)), and, consequently, his five-year prison term was unauthorized. Essentially, he claims that his sentence was too low, apparently as a means to return to the trial court for resentencing under a more favorable statutory scheme.

¶ 36    As stated, the Act provides a remedy for claims of a constitutional dimension, not statutory claims. Defendant suggests, however, that this error rendered his sentence void.

¶ 37    The void sentencing rule created an exception to forfeiture, giving parties the ability to challenge a sentence not authorized by statute in any court at any time. *People v. Price*, 2016 IL 118613, ¶ 16. The supreme court subsequently abolished this rule, however, leaving such matters subject to any procedural restraints. *People v. Castleberry*, 2015 IL 116916, ¶¶ 11-19. Thus, defendant is not entitled to relief in these proceedings under the Act.

¶ 38                                III. Conclusion

¶ 39    In light of our determination that defendant cannot show that (1) his sentence violated the eighth amendment or the proportionate penalties clause, (2) trial counsel was ineffective at sentencing or (3) his statutorily unauthorized sentence is appropriately raised in this setting, defendant is not entitled to second-stage proceedings. Nor is he entitled to benefit from section 5-4.5-105 at a new sentencing hearing. See *Hunter*, 2017 IL 121306, ¶ 55 (stating that the defendants, who were sentenced before section 5-4.5-105 took effect, did not raise any errors that would permit vacatur of their sentences and resentencing under the new statute).

¶ 40    For the foregoing reasons, we affirm the trial court's judgment.

¶ 41    Affirmed.