# Illinois Official Reports

## Appellate Court

---

### *People v. Foxx*, 2018 IL App (1st) 162345

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARNELL FOXX, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-16-2345 |
| Filed | October 31, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 97-CR-20768; the Hon. James Michael Obbish, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Karl H. Mundt, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Matthew Connors, and Noah Montague, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.<br>Justices Howse and Cobbs concurred in the judgment and opinion. |

**OPINION**

¶ 1        After a jury trial, the defendant, Darnell Foxx, was convicted of two counts of first degree murder and two counts of aggravated battery with a firearm. The defendant, who was 15 years old at the time he committed the crime, was sentenced to two terms of life imprisonment, followed by two consecutive 30-year prison terms. After the defendant's conviction was affirmed on direct appeal (*People v. Foxx*, No. 1-00-0387 (Feb. 18, 2003) (unpublished order under Illinois Supreme Court Rule 23) (*Foxx I*)), the defendant filed a *pro se* postconviction petition. While that petition was pending before the trial court, the United States Supreme Court decided *Miller v. Alabama*, 567 U.S. 460 (2012), and our supreme court decided *People v. Davis*, 2014 IL 115595. Based on these two decisions, the trial court vacated the defendant's original sentence and ordered a new sentencing hearing.

¶ 2        After new evidence was presented at that sentencing hearing, the defendant was sentenced to two concurrent 45-year prison terms for each first degree murder conviction, followed by two consecutive 14-year prison terms for the aggravated battery with a firearm convictions. The defendant appeals, contending that (1) he was denied his right to effective representation when his attorney failed to seek a discretionary transfer hearing to juvenile court under the 2016 amendments to the Juvenile Court Act of 1987 (Pub. Act 99-258 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-130(1)(a)(i))), which became effective prior to his resentencing hearing and which would have excluded a 15-year-old charged with murder from the class of juvenile offenders subject to automatic transfer to adult court, and (2) the trial court abused its discretion in sentencing him by placing too much emphasis on deterrence and ignoring the mitigating circumstances of his traumatic childhood. For the reasons that follow, we affirm.

¶ 3                                   I. BACKGROUND

¶ 4        Since on direct appeal we already presented all of the facts of this case, we now merely summarize the trial record and set forth only those facts and procedural history necessary to the resolution of issues in this appeal.

¶ 5        After his arrest on June 25, 1997, the defendant and four other codefendants were charged with numerous crimes stemming from his involvement in the June 22, 1997, drive-by shooting, which resulted in the death of two victims—Salada Smith (Salada) and Joshua Thomas (Joshua)—and the wounding of two others.

¶ 6        The defendant was tried in a simultaneous, but separate, jury trial with one of the codefendants—his 17-year-old cousin, Javell Ivory (Ivory). The following relevant evidence was adduced at his trial. The defendant gave a statement to police, admitting (1) that on the morning in question, he was inside a stolen van with four codefendants, who were all fellow street gang members; (2) that they drove to a location where they intended to shoot a member of a rival gang in retaliation for the recent shooting of another member of the defendant's gang; (3) that at that location, using his "Tech .9 machine pistol," the defendant fired into a group of four people; (4) that one of the codefendants also fired shots into the group; and (5) that after they fled the scene, the defendant hid his gun in his girlfriend's diaper bag and placed that bag in his refrigerator. At trial, the State also presented evidence that the police subsequently recovered a gun in a diaper bag located at the defendant's residence. Forensic firearm analysis of that gun established that the bullets recovered from it matched the bullets recovered from the bodies of both murder victims.

¶ 7        After the jury found the defendant guilty of two counts of first degree murder and two counts of aggravated battery with a firearm, the court sentenced him to two natural life sentences to be served consecutively with two 30-year prison terms. The defendant's conviction and sentence were affirmed on direct appeal. See *Foxx I*, No. 1-00-0387.

¶ 8        On January 10, 2008, the defendant filed a *pro se* postconviction petition pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2008)). Because of delays in the proceedings, the petition was automatically advanced to the second stage of postconviction review, and the defendant was appointed counsel. Counsel subsequently filed an amended petition for postconviction relief, arguing, *inter alia*, that the defendant's mandatory sentence of natural life without parole violated both the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) and the Illinois proportionate penalties clause (Ill. Const. 1970, art. I, § 11). The State filed a motion to dismiss. While the postconviction proceedings were pending before the trial court, on June 25, 2012, the United States Supreme Court decided *Miller*, 567 U.S. 460 and our supreme court decided *Davis*, 2014 IL 115595. The defendant was granted leave to supplement his petition with these decisions, and the State was permitted to respond. Based on the aforementioned decisions, which invalidated mandatory natural life sentences for juveniles, the trial court effectively granted postconviction relief and ordered the defendant's original sentence be vacated and that the matter be set for a new sentencing hearing.

¶ 9        The new sentencing hearing was held on May 24, 2016.[1] The defendant was 34 years old at the time and had already served 19 years in prison.

¶ 10        For purposes of resentencing, the parties agreed that the defendant could be sentenced under the law in effect in 1997. As such, the sentencing range for each murder conviction was 20 to 60 years' imprisonment. In addition, the sentencing range for each aggravated battery with a firearm conviction was between 6 and 30 years' imprisonment. These sentences had to be served consecutively to each other and to the sentences imposed for the murder convictions.

¶ 11        The trial judge began the sentencing hearing by noting that a new presentencing investigation report (PSI) and a mitigation memorandum had been submitted to him.

¶ 12        In aggravation, the State recounted the facts of the case, pointing out that one of the two murder victims, Salada, was pregnant at the time of the shooting. The State also presented two victim impact statements. Salada's mother, Obrellia Ann Smith (Smith), testified that her daughter, who was 24 years old and pregnant at the time, was murdered in a senseless drive-by shooting, leaving behind a six-year-old daughter. She further stated that Salada's sister could never get over Salada's death, had a nervous breakdown, and "took to drugs and eventually died of a heroin overdose." In her statement, Smith described the hopelessness she felt since the loss of her daughter, but then said that she forgave the defendant and continued to pray for him.

¶ 13        Christine Buckner, Joshua's mother, next stated, among other things, that her son was only 21 years old when he was killed as a result of the defendant's "joy riding." She described her pain, but also stated that she did not want to see the defendant, who was only 15 years old when the crime occurred, spend the rest of his life in jail.

---

[1]The defendant's sentencing hearing was held simultaneously with that of his codefendant, and cousin, Ivory.

¶ 14        In aggravation, the State sought the imposition of a 76-year sentence. Noting that the truth-in-sentencing laws were not in place in 1997, the State argued that the defendant would have to serve only 50% of his sentence and because he has already served 19 years, he could leave prison at age 53.

¶ 15        In mitigation, the State presented two witnesses: (1) a social worker, Hina Rehman (Rehman), and (2) a psychological therapy expert, Dr. Frederick W. Gross (Dr. Gross).

¶ 16        Rehman first testified that, in compiling her report for purposes of the sentencing hearing, she reviewed all police and Illinois Department of Corrections (IDOC) records regarding the defendant and interviewed numerous members of the defendant's family, including his brother, Derrick Foxx (Derrick). She also spoke to the defendant about 10 to 12 times.

¶ 17        Rehman testified that based on all of the foregoing, she concluded that the defendant had a very traumatic childhood. According to Rehman, the defendant's biological father was not involved in his life. His mother was a drug addict, who would disappear from the house for periods of time and who was repeatedly arrested for drug possession and prostitution.

¶ 18        Rehman testified that, as a result, the defendant was forced to "be on the streets to collect money to feed his siblings and himself." He saw death and violence in his neighborhood and was often beaten up himself. The defendant's older brother, Derrick, advised him that "the only way to get protection if you had no parents around was through a gang." With the help of Derrick, the defendant became involved in gang activities when he was only 10 years old.

¶ 19        Rehman further testified that since his incarceration, the defendant has not been involved in any violence. Instead, he has participated in various programs and has obtained his GED, even though under his original sentence, he had no hope of ever leaving prison. The defendant is also a prolific writer and has begun a novel while incarcerated. Rehman averred that when he leaves prison, the defendant wants to return to his community and help minors with no parents, and in a similar predicament to his, make better choices and avoid gang life.

¶ 20        According to Rehman, the defendant expressed remorse over what he had done. He stated that he wished he had known better when he was 15 years old, wished that he had better resources, and wished he had adults to look up to, who would have motivated him not to become involved in gangs. The defendant described the harshness of prison life, told Rehman that he has been molested several times, and stated that he has seen "a lot of people get hurt" since he has been "inside."

¶ 21        Dr. Gross next testified consistently with Rehman. He stated that, for purposes of the sentencing hearing, he created a psychological evaluation and assessment of the defendant. In doing so, he interviewed the defendant eight times and reviewed his IDOC and county jail records. Dr. Gross opined that, based on the aforementioned, "the defendant seemed to him to be such a different person now than what he was when he was young."

¶ 22        Consistently with Rehman, Dr. Gross testified about the defendant's childhood, his non-present father and drug addicted mother, his initiation into gang life prompted at an early age by his brother, his remorse about the shooting, the steps he had taken to better himself in prison, and his wish to help others upon release. Additionally, Dr. Gross testified that the defendant told him that he was often physically abused as a child by his mother and others. According to Dr. Gross, the defendant "genuinely wanted to repair what he had done and seemed to have hope for the future."

¶ 23    After Dr. Gross's testimony, in allocution, the defendant apologized to the victims and the victims' families and offered that he had a distorted world view at the time he committed the crimes. At that time, he believed "crime was cool," but over time he has come to a different appreciation.

¶ 24    In mitigation, defense counsel did not specify the term of years sought, but merely appealed to the trial court to impose a "shorter sentence." In doing so, counsel argued that the defendant's youth, immaturity, and traumatic childhood severely affected his decision-making leading up to the offense, but that his conduct since being in prison and his stated ambitions to help others clearly showed a rehabilitative potential, warranting a lesser prison term.

¶ 25    After hearing the arguments, and before issuing its decision, the trial court took a continuance to consider the "great deal of material" presented to it "through the excellent efforts of the attorneys." As the court explained: "I want to give every bit of consideration to the testimony that I heard today, the statements that *** [the] defendant[ ] made, the arguments of counsel, and to put it in context with the documents that previously have been submitted both by the State and by the Defense."

¶ 26    The court subsequently sentenced the defendant to concurrent 45-year prison terms for the two murder convictions, followed by two consecutive 14-year prison terms for aggravated battery with a firearm. The court noted that the aggregate total sentence was 73 years. With good behavior, the sentence could be served at 50%. Therefore, the defendant could be released from prison at age 51.

¶ 27    In issuing the sentence, the trial court, *inter alia*, acknowledged that the defendant was 15 years old at the time the crimes were committed and that under the current sentencing laws, a judge must "consider the chronological age of the offender, hallmark features of youth, including their past history, their failure to appreciate risks and consequences, [and] *** their home environment."

¶ 28    The court then commented on the defendant's potential for rehabilitation, stating that the defendant had shown "serious potential." The court explained that this potential had been limited by a lack of resources from the IDOC, but that since the *Miller* decision, the IDOC had made greater resources available and the defendant had taken advantage of them. The court further found relevant that the defendant had "shown and taken some positive steps" in joining a program consistent with his stated ambition to help keep youth from gangs. It also noted the defendant's good behavior in prison, as well as his sincerity in allocution.

¶ 29    Nonetheless, the court emphasized that the crimes resulted from the defendant's own poor choices. As the court explained:

    "[G]iven all we have learned about [him] from the lengthy interviews that [t]he expert witnesses testified to, [the defendant] still made some rather terrible choices, obviously, in [his] life. And they were choices.

        People still have a choice. The environment can be terrible and it can have this war zone or environment described by the witnesses, but not everybody succumbs. Some people have common sense and morals and they can tell from the beginning what's right and what is wrong.

        [The defendant] made a rather desired choice that struck me as I have prepared for the sentencing hearing. [He] joined a gang. And the name of the gang that [he] joined probably should have told anybody something even if they were juveniles. When you

- 5 -

join a gang who go by the name of Insane Vice Lords, one of the words might say well, it will be—Every one of those things connotated just an anti-social and a destructive organization.

Need I say more? Insane. Well, there's something, you know, I want to be involved in an organization and I am going to call myself Insane Vice and a Lord. I am going to be the master of my domain. Vice is the least offensive of the terms. Some choices were made, and juveniles make these choices without the benefit of the wisdom that hopefully an adult would have, but still it was a matter of free choice. It was a matter of free choice to decide to engage in a revenge attack on another individual. And it doesn't matter if it was a spur of the moment decision."

¶ 30　The court finally emphasized that in order to stop gangs from using juveniles to "do their dirty work" and continue to "wreak havoc on society," it had given serious consideration to the deterrent effect of the defendant's sentence.

¶ 31　After the court issued its sentence, the defendant moved for reconsideration, arguing that the sentence was excessive in light of the mitigating circumstances of youth that must be considered under *Miller*. The trial court denied that motion, and the defendant now appeals.

¶ 32　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 33　On appeal, the defendant makes two contentions. He first argues that his counsel at resentencing was ineffective for failing to request that his cause be transferred to juvenile court under the 2016 amendments to the Juvenile Court Act (Act). See Pub. Act 99-258 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-130 (1)(a)(i)). Second, he asserts that the trial court abused its discretion in sentencing him to an aggregate of 73 years' imprisonment, by placing too much emphasis on deterrence and ignoring the mitigating circumstances of his childhood. We address each of the defendant's contentions in turn.

¶ 34　　　　　　　　　　　　A. Ineffective Assistance of Counsel

¶ 35　We begin with the defendant's contention regarding counsel's ineffectiveness. It is axiomatic that every defendant has a constitutional right to the effective assistance of counsel. See U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. Claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984); see also *People v. Lacy*, 407 Ill. App. 3d 442, 456 (2011); see also *People v. Colon*, 225 Ill. 2d 125, 135 (2007) (citing *People v. Albanese*, 104 Ill. 2d 504 (1984) (adopting *Strickland*)). According to *Strickland*, in order to prevail on a claim of ineffective assistance of counsel, a defendant must establish both (1) that his counsel's conduct fell below an objective standard of reasonableness under prevailing professional norms and (2) that he was prejudiced by counsel's conduct, *i.e.*, that but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. See *Lacy*, 407 Ill. App. 3d at 456; see also *People v. Ward*, 371 Ill. App. 3d 382, 434 (2007) (citing *Strickland*, 466 U.S. at 687-94); see also *People v. Domagala*, 2013 IL 113688, ¶ 36. Failure to establish either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel. See *People v. Henderson*, 2013 IL 114040, ¶ 11; see also *People v. Patterson*, 217 Ill. 2d 407, 438 (2005).

¶ 36　The defendant here contends that he was denied his right to effective representation where his counsel at resentencing failed to file a motion requesting that his case be transferred to the

juvenile court under the 2016 amendments to section 5-130 of the Act. Pub. Act 99-258 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-130 (1)(a)(i)) (hereinafter the automatic transfer provision). Under the new amendments, the defendant, who was 15 years old when he committed the crimes, was no longer subject to automatic transfer to adult court, but was instead entitled to a discretionary transfer hearing in juvenile court before he could be sentenced as an adult. *Id.* The defendant contends that because the 2016 amendments were procedural and his case was "pending" in the trial court at the time the amendments went into effect (almost six months *before* his resentencing hearing), the change in law applied to his case. See *People ex rel. Alvarez v. Howard*, 2016 IL 120729 (holding that the amendments to section 5-130(1) applied retroactively to "ongoing proceedings" that were "pending" in the trial court at the time the amendment became effective). Accordingly, he argues that had counsel filed a motion seeking transfer of the case to the juvenile court, that motion would have been granted and there is a reasonable probability that the outcome of his proceedings would have been different. Specifically, he contends that once the cause was moved to juvenile court, the State would have had to petition for a discretionary transfer hearing. The defendant contends that there is a strong probability that under the facts of his case, particularly his traumatic childhood and age, the juvenile court would have found that transfer was not warranted and that instead he should be resentenced under the Act. See 705 ILCS 405/5-710 (West 2016).

¶ 37    The State, on the other hand, asserts that, regardless of whether counsel's failure to file a motion seeking to transfer the case to juvenile court constituted deficient performance, under our supreme court's recent ruling in *People v. Hunter*, 2017 IL 121306, the defendant cannot establish prejudice. For the reasons that follow, we agree.

¶ 38    It is well accepted that "[a] defendant's failure to establish prejudice under *Strickland* is fatal to an allegation of ineffective assistance of counsel," and that if "no prejudice ensued," a claim may be "disposed of on that ground alone, without considering the separate question [of] whether counsel was deficient." *People v. Harris*, 164 Ill. 2d 322, 349 (1994) (citing *Strickland*, 466 U.S. at 697).

¶ 39    In *Hunter*, our supreme court considered and rejected the retroactive application of the amendments to the automatic transfer provision to a cause pending on direct appeal. *Hunter*, 2017 IL 121306, ¶ 30. In doing so, the court in *Hunter* first reaffirmed its decision in *Howard*, where it held that the automatic transfer provision amendments applied retroactively to a defendant who had been charged under the old statute, was awaiting trial when the amendments became effective, and therefore had "ongoing proceedings" that were "pending" in the trial court. *Id.* ¶¶ 18-33 (citing *Howard*, 2016 IL 121729). The court then observed two major distinctions between the facts of *Hunter* and those of *Howard*.

¶ 40    The first distinction involved the difference between a case that is "pending" and one that is "ongoing." Our supreme court explained that, in *Howard*, proceedings in the trial court had not yet been concluded. Thus, according to our supreme court, "[i]n a real-world sense those proceedings were 'ongoing.' " *Hunter*, 2017 IL 121306, ¶ 30. In contrast, in *Hunter*, the defendant's case had reached judgment and was pending in the appellate court on direct review. *Id.* ¶ 27. The court acknowledged that section 4 of the Statute on Statutes "requires that 'the proceedings thereafter'—after the adoption of the new procedural statute—'shall conform, so far as practicable, to the laws in force at the time of such proceeding.' " (Emphasis omitted.) *Id.* ¶ 31 (quoting 5 ILCS 70/4 (West 2016)). Thus, the court reasoned that "[s]ection

4 contemplates the existence of proceedings after the new or amended statute is effective to which the new procedure could apply," *i.e.*, an "ongoing proceeding." *Id.* In comparison, in *Hunter*, the proceedings in the trial court were completed well before the statute was amended. *Id.* ¶ 32. Thus, "[n]o 'ongoing proceedings' exist[ed] to which the amended statute could apply." *Id.*

¶ 41    The second distinction our supreme court made was that, unlike the facts of *Howard*, application of the amended statute in *Hunter* was "impracticable." *Id.* ¶ 43. In *Howard*, the 19-year-old defendant was still "subject to the jurisdiction" of the juvenile court at the time the court rendered its decision. *Id.* ¶ 38. Accordingly, it was practicable, or feasible, for the matter to be remanded to the juvenile court for a transfer hearing. *Id.* In *Hunter*, however, the defendant was 22 years old at the time the court rendered its decision and therefore "[a] discretionary hearing in the juvenile court [was] no longer feasible because the juvenile court [could] not exercise jurisdiction over [him]." *Id.*

¶ 42    In sum, in *Hunter*, our supreme court held that the amendment to the automatic transfer provision did not apply retroactively because the amendment "did not become effective until after [the defendant's] trial court proceedings were concluded and his case was pending in the appellate court; because no reversible error necessitate[d] remand for further proceedings to which the amended statute could apply; and because [the defendant], in any event, [wa]s no longer subject to the jurisdiction of the juvenile court, making remand impracticable." *Id.* ¶ 43.

¶ 43    We agree with the defendant that the situation before us involves a resentencing hearing, and not a direct appeal, and is therefore procedurally more akin to *Howard* than *Hunter*. Nonetheless, we find that the reasoning of *Hunter*, regarding the unfeasibility of remanding this cause to the juvenile court when the defendant has reached adulthood, applies with equal force here. The defendant in this case was 34 years old at the time of his resentencing hearing, and therefore any potential transfer to the juvenile court would have proved impracticable, since, as an adult, the defendant would not be subject to juvenile proceedings under the Act.

¶ 44    In this respect, we agree with the defendant that the term "jurisdiction" used by the supreme court in *Hunter* was a poor word choice. The defendant correctly points out that jurisdiction is " 'conferred by the constitution, not the legislature' " (*People v. Castleberry*, 2015 IL 116916, ¶ 15 (quoting *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 335-36 (2002))), and that "while the legislature can create new justiciable matters by enacting legislation that creates rights and duties, the failure to comply with a statuary requirement or prerequisite does not negate the circuit court's subject matter jurisdiction or constitute a nonwaivable condition precedent to the circuit court's jurisdiction" (*LVNV Funding, LLC v. Trice*, 2015 IL 116129, ¶ 37 (citing *In re Luis R.*, 239 Ill. 2d 295, 300-02 (2010))). It is axiomatic that "a circuit court is a court of general jurisdiction, which need not look to [a] statute for its jurisdictional authority" (internal quotation marks omitted) (*Castleberry*, 2015 IL 116916, ¶ 19), and that "the juvenile court is simply a division of the circuit court" (*In re Greene*, 76 Ill. 2d 204, 213 (1979); *People v. Fiveash*, 2015 IL 117669, ¶ 33 (citing *Greene* for the same proposition)). As such, the defendant is correct that whether a person is tried in juvenile court or criminal court is a matter of procedure rather than jurisdiction.

¶ 45    Nonetheless, once a defendant reaches the age of 21, under the Act, the juvenile court has no statutory authority over him. 705 ILCS 405/5-105(10) (West 2014) (" 'Minor' means a person under the age of 21 years subject to this Act."). "The age limit on juvenile court

adjudication is set solely by the statutory language enacted by the legislature." *Fiveash*, 2015 IL 117668, ¶ 33. Therefore, if, as in this case, "a defendant's age places him outside the scope of the [Juvenile Court] Act, the court has no authority to proceed under the Act." *Id.* Accordingly, since the defendant here was 34 years old at the time of his resentencing, transfer to juvenile court would have proven impracticable because the juvenile court would no longer have had authority to proceed against him under the Act. *Id.* We believe that this is what the supreme court meant in *Hunter* when it improvidently stated that the juvenile court may not exercise "jurisdiction" over an adult defendant.

¶ 46    Given that, under *Hunter*, the defendant's cause could not have been transferred to juvenile court under the 2016 amendments to the automatic transfer provision, the defendant has failed to establish prejudice and his ineffective assistance of counsel claim must fail.

¶ 47                                    B. Abuse of Discretion

¶ 48    The defendant next contends that the trial court abused its discretion when it sentenced him to an aggregate of 73 years' imprisonment, by placing too much emphasis on deterrence and ignoring the mitigating circumstances of his childhood. For the reasons that follow, we disagree.

¶ 49    It is well established that the trial court is the proper forum to determine a sentence and that a sentencing decision is entitled to great deference and weight. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). The reason for such deference is that the trial judge, "having observed the defendant and the proceedings, is in a much better position to consider factors such as the defendant's credibility, demeanor, moral character, mentality, environment, habits, and age." *People v. Snyder*, 2011 IL 111382, ¶ 36. Therefore, a sentence that falls within the appropriate statutory range will not be disturbed absent an abuse of discretion. *People v. Coleman*, 166 Ill. 2d 247, 258 (1995). Such abuse occurs only when the sentence varies greatly from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *Snyder*, 2011 IL 111382, ¶ 36.

¶ 50    A sentence should reflect both the seriousness of the offense and the objective of restoring the offender to useful citizenship. Ill. Const. 1970, art. I, § 11; *People v. Wilson*, 2016 IL 141063, ¶ 11; *People v. McWilliams*, 2015 IL App (1st) 130913, ¶ 27. Nonetheless, the seriousness of the offense, rather than any mitigating evidence, is the most important factor in sentencing. *People v. Kelley*, 2015 IL App (1st) 132782, ¶ 94. The trial court is presumed to consider all relevant factors and any mitigation evidence presented, but has no obligation to recite and assign any value to each factor. *Wilson*, 2016 IL 141063, ¶ 11. Rather, the defendant "must make an affirmative showing that the sentencing court did not consider the relevant factors." *People v. Burton*, 2015 IL App (1st) 131600, ¶ 38. In reviewing a sentence for abuse of discretion, the reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed the various factors differently. *Alexander*, 239 Ill. 2d at 213.

¶ 51    In the present case, the defendant chose to be sentenced under the law in 1997, the year he committed the crimes in question. Accordingly, the sentencing range for each of his two murder convictions was from 20 to 60 years (730 ILCS 5/5-8-1(a)(1)(a) (West 1996)) and from 15 to 60 years for each of his two aggravated battery with a firearm convictions (720 ILCS 5/12-4.2(b) (West 2016)). Because under the law in effect in 1997, the sentences for the two aggravated battery with a firearm convictions had to be served consecutively (730 ILCS

5/5-8-4(a) (West 1998)) and the defendant's sentence was subject to day-for-day credit (730 ILCS 5/3-6-3 (West 1998)), the total sentencing range available to the trial court was between 50 and 180 years' imprisonment, to be served at 50%.

¶ 52 The trial court here sentenced the defendant in the lower end of the sentencing range to 73 years' imprisonment. Contrary to the defendant's assertion, the record before us unquestionably establishes that, in doing so, the court considered and weighed the seriousness of the offense and the deterrent effect of the defendant's sentence with all relevant mitigating factors, including the defendant's age and immaturity, his difficult upbringing, and his laudable efforts at rehabilitation. While we may find the 73-year sentence objectionable, and may have imposed a sentence far closer to the minimum range, we are constricted by our standard of review and are not at liberty to reweigh any sentencing factors, as the defendant would have us do. See *Alexander*, 239 Ill. 2d at 213. The sentence before us is neither greatly at variance with the spirit and purpose of the law nor manifestly disproportionate to the nature of the offense. *Id.* Accordingly, under the record below, we are compelled to conclude that the trial court did not abuse its discretion.

¶ 53                                    III. CONCLUSION

¶ 54 For the aforementioned reasons, we affirm the judgment of the circuit court.

¶ 55 Affirmed.