2025 IL App (1st) 240121-U

No. 1-24-0121

Order filed May 23, 2025

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County. |
| Respondent-Appellee, | ) ) | |
| v. | ) ) | No. 01 CR 29438 |
| MICHAEL SMITH | ) ) | Honorable Thomas J. Hennelly, Judge, Presiding. |
| Petitioner-Appellant. | ) | |

JUSTICE NAVARRO delivered the judgment of the court.
Justice Mitchell concurred in the judgment.
Presiding Justice Mikva dissented.

**ORDER**

¶ 1   *Held:*   Where defendant argues that he is entitled to a new transfer hearing, we affirm the circuit court's order dismissing his section 2-1401 petition.

¶ 2       In 1998, petitioner Michael Smith, who was 16 years old, was charged as a juvenile with, among other charges, aggravated discharge of a firearm. Smith was subsequently transferred to criminal court pursuant to a presumptive-transfer provision of the Juvenile Court Act of 1987 that had been added through Public Act 88-680 (eff. Jan. 1, 1995). Pub. Act 88-680 (eff. Jan. 1, 1995) (adding 705 ILCS 405/5-4(3.3)). In criminal court, Smith was charged with and pled guilty to attempted first degree murder (720 ILCS 5/8-4) (West 1998); 720 ILCS 5/9-1 (West 1998)). In

2023, Smith filed a *pro se* petition for relief from judgment under section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2022)), arguing that his attempted murder conviction was void because the statute under which he was transferred from juvenile court to criminal court was unconstitutional and void *ab initio* under *People v. Cervantes*, 189 Ill. 2d 80 (1999). He requested the court vacate his conviction for attempted murder as well as his subsequent conviction in 2001 for unlawful use of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2000)), for which the attempted murder conviction served as the predicate felony offense. The circuit court granted the State's motion to dismiss Smith's section 2-1401 petition, and Smith now appeals that order. For the following reasons, we affirm.

¶ 3                              I. BACKGROUND

¶ 4         In 1998, Smith was charged as a juvenile with aggravated battery, aggravated discharge of a firearm, unlawful use of a weapon, and unlawful possession of a firearm. As previously noted, under a presumptive-transfer provision of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/5-4 (3.3) (West 1996), as amended by Public Act 88-680 (eff. Jan. 1, 1995), also known as the Safe Neighborhoods Law, the State moved to transfer Smith from juvenile court to criminal court. The circuit court granted the State's petition, and Smith was subsequently charged in criminal court in case No. 98 CR 19904 with, among other charges, attempted first degree murder (720 ILCS 5/8-4) (West 1998); 720 ILCS 5/9-1 (West 1998)). Smith pled guilty to attempted murder and was sentenced to seven years in prison.

¶ 5         In the instant case, in 2001, when Smith was 20 years old, he was charged with UUWF (720 ILCS 5/24-1.1(a) (West 2000)), and his attempted murder conviction served as the predicate felony offense. Smith pled guilty to UUWF and was sentenced to three years in prison. We note that the only transfer hearing that occurred was in the 1998 case, where Smith pled guilty to the

attempted murder conviction that served as the predicate felony offense for the UUWF conviction in this case.

¶ 6        In 2007, in 2 separate cases, Smith was found guilty of armed robbery and first degree murder and was sentenced to consecutive prison sentences of, respectively, 25 and 40 years.

¶ 7        In the 1998 case, in 2017, Smith filed a *pro se* section 2-1401 petition to vacate judgment and in 2022, he filed a *pro se* petition for certificate of innocence under section 2-702 of the Code (735 ILCS 5/2-702 (West 2022)), both of which were based on the argument that the provisions of the Act amended by Public Act 88-680 under which he was transferred from juvenile court to criminal court were unconstitutional and void *ab initio*.

¶ 8        Specifically, in Smith's 2017 section 2-1401 petition to vacate judgment filed in the 1998 case, he asserted that the statutory provisions of the Act under which he was transferred from juvenile court to criminal court were enacted as part of Public Act 88-680, which the supreme court in *Cervantes* found unconstitutional and void *ab initio* for violating the single-subject clause. Smith therefore argued that the provisions of the Act under which he was transferred from juvenile court to criminal court were invalid and void *ab initio*. Smith argued that his transfer from juvenile court to criminal court was void, and he requested the circuit court vacate his attempted murder conviction and grant him a new transfer hearing.

¶ 9        The circuit court dismissed Smith's petition, finding his claim moot. The court stated that Smith's sentence was discharged in the mid-2000s and that, "[h]aving fully served his sentence long ago, including mandatory supervised release, the Court cannot now afford [him] effectual relief."

¶ 10        In Smith's 2022 petition for certificate of innocence filed in the 1998 case, he raised the same argument that he raised in his previous section 2-1401 petition. The circuit court

dismissed Smith's petition, finding that he did not satisfy the factors required to obtain a certificate of innocence and that he did not provide any evidence that he was innocent of the charges in the indictment. The court also stated that, "[t]he only unconstitutional part of [Smith's] case is Public Act 88-0680 [*sic*] mandating [Smith's] transfer from juvenile court to adult criminal court, which speaks not at all to [Smith's] innocence of his indicted charges."

¶ 11    In May 2023, in this case, Smith filed the instant *pro se* petition for relief from judgment under section 2-1401 of the Code, in which he continued to assert that he was transferred from juvenile court to criminal court under the provisions of the Act added by Public Act 88-680, which the supreme court found unconstitutional and void *ab initio* in *Cervantes*. Smith therefore argued that his transfer to criminal court as well as his attempted murder conviction were void. Smith argued the circuit court should vacate his convictions for attempted murder and UUWF, for which his attempted murder conviction served as the predicate felony offense.

¶ 12    In July 2023, Smith filed a motion for leave to cite additional authority, in which he cited *People v. Matthews*, 2022 IL App (4th) 210752 and *In re N.G.*, 2018 IL 121939, to support his argument that challenges based on void judgments may be raised at any time and are not limited by forfeiture or other procedural bars. See *In re N.G.*, 2018 IL 121939, ¶ 57 ("[U]nder Illinois law, there is no fixed procedural mechanism or forum, nor is there any temporal limitation governing when a void *ab initio* challenge may be asserted"); *Matthews*, 2022 IL App (4th) 210752, ¶ 24 ("Voidness challenges are not subject to forfeiture or any other procedural bar, and such challenges may be raised 'at any time in any court' ").

¶ 13    The State moved to dismiss Smith's section 2-1401 petition, arguing that his petition was untimely, as it was filed beyond the two-year statute of limitations period allowed for section 2-1401 petitions, and that his challenge was not exempt from the statute of limitations period. The

State asserted that the court had already rejected Smith's challenge when he had previously raised it, and that Smith was not arguing that the offense of UUWF under which he was convicted was void *ab initio*. According to the State, a section 2-1401 petition was "not the proper legal vehicle" for Smith's challenge because his argument was based on errors of law and constitutional violations.

¶ 14        In Smith's response to the State's motion to dismiss, he stated that in the circuit court's order dismissing his petition for certificate of innocence, the court "found that [his] transfer from juvenile to criminal court was void." Smith noted that, "[w]hile the UUWF statute itself is not invalid, [his] conviction for UUWF derived from a facially unconstitutional statute—And is consequently void—because it was predicated on his void ab initio conviction for attempt first-degree murder." He asserted that challenges to a void judgment may be raised at any time and that "[p]rosecutors also share the responsibility of ensuring that void convictions are vacated and expunged."

¶ 15        At the hearing on Smith's petition, the State continued to argue that Smith's challenge was subject to the two-year statute of limitations period for section 2-1401 petitions and that, because he filed his petition more than two years after the court entered the final judgment, the court should dismiss his petition. The State argued that "the only cognizable claims in a 2-1401 would be *** the Court does not have any subject matter or personal jurisdiction over the Defendant and *** his offense is void *ab initio*." The State asserted that Smith's "argument is not void *ab initio*" and he did not have a "cognizable claim."

¶ 16        In response, Smith argued that in the circuit court's order dismissing his petition for certificate of innocence, the court "took judicial notice" that Public Act 88-680 "mandating [his] transfer from Juvenile Court to Criminal Court is void *ab initio*." Smith asserted that he could raise

a "void *ab initio* claim at any time in any proceeding" and that his transfer to criminal court as well as his "plea and conviction" were void. Smith highlighted that the facts of his case were similar to *People v. Brown*, 225 Ill. 2d 188, 196-97 (2007), where the supreme court concluded that because Public Act 88-680, which amended the provisions of the Act under which the defendant was transferred to criminal court, was void, the defendant's transfer to criminal court was also void.

¶ 17    Following argument, the court granted the State's motion to dismiss Smith's section 2-1401 petition. This appeal follows.

¶ 18                                    II. ANALYSIS

¶ 19    Smith contends he is entitled to a new transfer hearing because he was transferred from juvenile court to criminal court under provisions of the Act amended by Public Act 88-680, which has been found unconstitutional and void *ab initio* by our supreme court in *People v. Cervantes*, 189 Ill. 2d 80 (1999) and *People v. Brown*, 225 Ill. 2d 188 (2007). Smith argues therefore that his transfer from juvenile court to criminal court is also void, and he requests we grant him a new transfer hearing. According to Smith, if, after a new transfer hearing, the circuit court determines that he should not have been transferred from juvenile court, then it must vacate his attempted murder conviction as well as his UUWF conviction in this case, as he would not have a predicate felony offense.

¶ 20    Generally, a party must file a section 2-1401 petition to vacate a judgment more than 30 days but not more than 2 years after the final judgment. *People v. Thompson*, 2015 IL 118151, ¶ 28; 735 ILCS 5/2-1401(c) (West 2022). "An exception to the two-year limitations period, however, exists when the petition challenges a void judgment." *People v. Abdullah*, 2019 IL 123492, ¶ 13. Our supreme court has recognized two "circumstances when a judgment will be

6

deemed void: (1) when the judgment was entered by a court that lacked jurisdiction or (2) when the judgment was based on a statute that is facially unconstitutional and void *ab initio*." *Id*. Further, when a statute is determined to be facially unconstitutional "it is said to be void *ab initio*; that is, it is as if the law had never been passed." *In re N.G.*, 2018 IL 121939, ¶ 50.

¶ 21     "[W]hen a section 2-1401 petition presents a 'purely legal challenge to a judgment,' such as a claim that the earlier judgment was void," we review the circuit court's ruling *de novo*. *Stolfo v. KinderCare Learning Centers, Inc.*, 2016 IL App (1st) 142396, ¶ 22 (quoting *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 221 (1986)). Under *de novo* review, "we perform the same analysis that at trial judge would perform" and "we may affirm on any basis appearing in the record, whether or not the trial court relied on that basis and whether or not the trial court's reasoning was correct." *Khan v. Fur Keeps Animal Rescue, Inc.*, 2021 IL App (1st) 182694, ¶ 25.

¶ 22     Initially, we note the State argues that Smith's section 2-1401 petition is untimely because it was filed more than two decades after the judgment was entered and his challenge is not exempt from the two-year statute of limitations period for section 2-1401 petitions. The State asserts that the final judgment was not void, as the circuit court had jurisdiction to impose a sentence upon Smith when he pled guilty to UUWF and "the charge [UUWF] in this matter was not based upon a facially unconstitutional statute."

¶ 23     Smith pled guilty to UUWF in March 2002, and he filed his petition in May 2023, which is more than 20 years after the final judgment. However, Smith argues that his transfer from juvenile court to criminal court in the 1998 case was void because it was authorized by provisions of the Act enacted by Public Act 88-680, which our supreme court found facially unconstitutional and void *ab initio*. He also argues that the void transfer resulted in his attempted murder and UUWF convictions, as attempted murder was the predicate offense for UUWF. Because Smith is

arguing that his transfer from juvenile court to criminal court is void, as he was transferred under a facially unconstitutional law, and because his transfer resulted in his convictions for attempted murder and UUWF, Smith's challenge is not time-barred by the two-year statute of limitations period. See *Thompson*, 2015 IL 118151, ¶ 32 (a "voidness challenge that is exempt from forfeiture and may be raised at any time involves a challenge to a final judgment based on a facially unconstitutional statute that is void *ab initio*").

¶ 24        We also note that the State asserts that a section 2-1401 petition is "not the proper medium to plead errors of law or constitutional violations, such as immigration issues or inadequate counsel, or to substitute as an appeal." However, our supreme court has stated that "petitions under section 2-1401(f) of the Code are proper vehicles for attacking judgments as void and that such petitions are not subject to the general requirements for section 2-1401 petitions." *People v. Hubbard*, 2012 IL App (2d) 101158, ¶ 13 (citing *Sarkissian v. Chicago Board of Education,* 201 Ill. 2d 95, 104 (2002)). Further, "section 2-1401 of the Code permits either a legal or factual challenge to a final judgment if certain procedural and statutory requirements are satisfied." *Thompson*, 2015 IL 118151, ¶ 44. Accordingly, Smith's argument that his transfer from juvenile court to criminal court was void because it was based on a void *ab initio* law was properly raised under a section 2-1401 petition.

¶ 25        We now turn to Smith's argument that his transfer from juvenile court to criminal court was void. Smith argues, and the State does not dispute, that in the 1998 case he was transferred from juvenile court to criminal court pursuant to provisions of the Act that were amended by Public Act 88-680 (adding 705 ILCS 405/5-4(3.3)(a) (West 1996)), which our supreme court later found unconstitutional and void *ab initio* in *Cervantes*.

¶ 26       Through Public Act 88-680 (eff. Jan. 1, 1995), also known as the Safe Neighborhoods Law, the Illinois General Assembly amended various statutes, including portions of the Act. As part of the public act, the general assembly added section 5-4(3.3), which permitted the State to file a petition to prosecute a defendant, who was 15 years of age or older, in criminal court as opposed to juvenile court if he or she was charged with certain offenses, including aggravated discharge of a firearm and a Class X felony other than armed violence. Pub. Act 88-680 (eff. Jan. 1, 1995) (adding 705 ILCS 405/5-4(3.3)). Upon the State's petition, if the juvenile court determined that there was probable cause that the allegations in the petition were true, a rebuttal presumption existed that the defendant was not fit for juvenile court and should be prosecuted in criminal court. *Id.* This section became known as the presumptive-transfer provision. See *Brown*, 225 Ill. 2d at 196-97. However, in *Cervantes*, our supreme court held that Public Act 88-680 violated the single-subject clause of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8) and was therefore unconstitutional. 189 Ill. 2d at 98.

¶ 27       In *Brown*, 225 Ill. 2d 188, our supreme court discussed the consequences of Public Act 88-680 being held unconstitutional. There, before *Cervantes* was published, a defendant, who was 16 years old at the time he shot someone, had his case transferred from juvenile court to criminal court pursuant to the presumptive-transfer provision of Public Act 88-680. *Id.* at 193. In criminal court, the defendant pled guilty to attempted murder and was sentenced to 28 years' imprisonment. *Id.* at 193-94. After the defendant unsuccessfully filed an initial postconviction petition, he filed a successive petition, challenging his transfer from juvenile court to criminal court based on *Cervantes*' holding that Public Act 88-680 was unconstitutional. *Id.* at 194. The circuit court dismissed his petition, but the appellate court reversed. *Id.* at 194-95. The case then reached our supreme court. *Id.* at 197.

¶ 28 In reviewing various issues, the supreme court first focused on whether the defendant's transfer from juvenile court to criminal court was void. *Id.* at 198. The court observed that, in *Cervantes*, it held that Public Act 88-680 was unconstitutional, meaning the defendant was transferred from juvenile court to criminal court based on a law declared void *ab initio*. *Id.* at 198-199. Or, in other words, as the supreme court noted, a law with "no force or effect," as if the law "had never been passed." *Id.* at 199. The supreme court found that, because Public Act 88-680 was void, the defendant's transfer to criminal court was also void. *Id.* Consequently, our supreme court concluded that the defendant, now 25 or 26 years old, was entitled to a new transfer hearing to be performed in accordance with the Act, as it existed prior to the enactment of Public Act 88-680. *Id.* at 199, 202. According to the supreme court, following that hearing, if the juvenile court found that the defendant's transfer was improper, his original conviction for attempted murder and resulting sentence could not stand. *Id.* at 202. But, if the defendant's transfer was proper, his conviction would remain valid because *Cervantes* did not invalidate the substantive offenses with which he was originally charged and to which he pled guilty. *Id.* at 203.

¶ 29 Ten years after *Brown*, in *People v. Hunter*, 2017 IL 121306, our supreme court suggested that *Brown*'s remand for a new transfer hearing was improper, or, at the very least, would not have occurred if the State challenged the remand based on the defendant's age. In *Hunter*, the State charged the defendant with aggravated vehicular hijacking and armed robbery, both while armed with a firearm, for offenses he allegedly committed as a 16-year-old. *Id.* ¶ 4. At the time, both offenses were excluded from the jurisdiction of the juvenile court, meaning his case was automatically transferred to criminal court. *Id.* ¶ 5. The defendant was convicted of the offenses, and while his case was pending on appeal, Public Act 99-258 (eff. Jan. 1, 2016) became effective. *Id.* ¶¶ 6-7. Public Act 99-258 amended the Act and removed armed robbery while armed

with a firearm and aggravated vehicular hijacking while armed with a firearm as automatic-transfer offenses. *Id.* ¶ 8.

¶ 30       Before the supreme court, one of the issues it had to decide was whether the amendment to the automatic-transfer statute should be applied retroactively to the defendant's case, resulting in him obtaining a discretionary transfer hearing from juvenile court to criminal court. *Id.* ¶ 9. Our supreme court observed that applying the amendment retroactively to the defendant, whose case was pending on appeal, "would create inconvenience and a waste of judicial resources—a real-world result that the General Assembly could not have intended." *Id.* ¶ 36. The court additionally noted that, because the amendment was procedural, it could only apply to ongoing proceedings " 'so far as practicable.' " *Id.* ¶ 37 (quoting 5 ILCS 70/4 (West 2016)). After noting that " 'practicable' " was synonymous with " 'feasible,' " the court concluded that a discretionary transfer hearing for the now 22-year-old defendant was not "feasible because the juvenile court may not exercise jurisdiction over [him]," as he was no longer a minor. *Id.* ¶ 38. Relying on *Brown*, the defendant argued that a discretionary transfer hearing was still feasible despite his age. *Id.* ¶ 39. In rejecting that argument, our supreme court discussed the facts of *Brown* and observed that:

> "Although the defendant would have been 25 or 26 years old at the time we remanded the matter to the circuit court [in *Brown*], the State apparently made no argument challenging the remand based on the defendant's age. *Brown*'s silence on an issue that was not raised does not lend support to [the defendant's] position here that a remand to the juvenile court for a discretionary transfer hearing is feasible, notwithstanding that the juvenile court cannot exercise jurisdiction over a 22-year-old defendant." (Footnote omitted.) *Id.* ¶ 42.

¶ 31    Ultimately, our supreme court held that the amendment to the automatic-transfer statute could not be applied retroactively to the defendant's case. *Id.* ¶ 43.

¶ 32    Shortly after *Hunter*, the appellate court emphasized the impossibility of a remand to juvenile court for an adult. *People v. Patterson*, 2018 IL App (1st) 101573-C, ¶¶ 20, 22. There, the appellate court observed that, in an earlier decision, it had remanded the matter to the juvenile court for a hearing on whether to transfer the 24-year-old defendant's case to criminal court for sentencing. *Id.* However, in light of *Hunter*, our supreme court vacated the earlier decision and directed the appellate court to reconsider the case. *Id.* ¶ 20. After reconsideration, the appellate court concluded that "*Hunter* clarifies that this court cannot remand this case to the juvenile court," as the defendant was no longer a minor. *Id.* ¶ 22; see also *People v. Fiveash*, 2015 IL 117669, ¶ 14 (holding "that the juvenile court has no authority over defendant because he was 23 years old when the instant proceedings were instituted and was, therefore, no longer subject to the Act's provisions").

¶ 33    Further, we note that the Act defines a "minor" as "a person under the age of 21 years subject to this Act." 705 ILCS 405/5-105(10) (West 2022); *People v. Foxx*, 2018 IL App (1st) 162345, ¶ 45. This court has previously explained that, "once a defendant reaches the age of 21, under the Act, the juvenile court has no statutory authority over him." *Foxx*, 2018 IL App (1st) 162345, ¶ 45. As such, if " 'a defendant's age places him outside the scope of the [Juvenile Court] Act, the court has no authority to proceed under the Act.' " *Id.* (quoting *Fiveash,* 2015 IL 117669, ¶ 33).

¶ 34    Applying these decisions here, Smith was transferred from juvenile court to criminal court under provisions of the Act amended by Public Act 88-680, which our supreme court found unconstitutional and void *ab initio*. *Cervantes*, 189 Ill. 2d at 98; *Brown*, 225 Ill. 2d at 198-99. As

such, Smith's transfer from juvenile court to criminal court was void because it was based on a facially unconstitutional and void *ab initio* law. See *id.*

¶ 35      Smith requests that, because his transfer is void, this court should grant him a new transfer hearing under the standards of the Act which were in place before the enactment of Public Act 88-680. He asserts that the outcome of the hearing will determine whether he has a basis to challenge his convictions for attempted murder and UUWF.

¶ 36      Smith filed his section 2-1401 petition in May 2023, when he was 41 years old and more than 20 years after he pled guilty to attempted murder and after he pled guilty to UUWF in this case. As such, because Smith was 41 years old and no longer a minor under the Act when he filed his petition, under our supreme court's decision in *Hunter*, a new transfer hearing is not practicable because the juvenile court does not have authority over him. See *Hunter*, 2017 IL 121306, ¶¶ 38-42; *Foxx*, 2018 IL App (1st) 162345, ¶ 45 (finding that "since the defendant here was 34 years old at the time of his resentencing, transfer to juvenile court would have proven impracticable because the juvenile court would no longer have had authority to proceed against him under the Act").

¶ 37      We note that the State asserts that Smith completed his sentence for UUWF about two decades ago and that, therefore, his claim is moot, and this court cannot provide effectual relief. Smith responds that his claim is not moot, as he has experienced collateral consequences from the void transfer and subsequent convictions for attempted murder and UUWF. See *Sibron v. New York*, 392 U.S. 40, 57 (1968) ("a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction"). Smith asserts that at the sentencing hearings in 2007 for his most recent cases, the trial court used

his convictions for attempted murder and UUWF in aggravation when it sentenced him to a total term of 65 years in prison.

¶ 38    However, in this case, as previously noted, Smith requests that we grant him a new transfer hearing pursuant to the Act that was in effect before the enactment of Public Act 88-680. As previously discussed, given that Smith was 41 years old when he filed his section 2-1401 petition, the juvenile court no longer has authority over him to conduct a new transfer hearing. See *Hunter*, 2017 IL 121306, ¶¶ 38-42; *Foxx*, 2018 IL App (1st) 162345, ¶ 45. Further, Smith completed serving his sentence for attempted murder and UUWF about 20 years ago. Smith is also not arguing that the offenses of attempted murder or UUWF under which he was convicted in 1998 and in this case are unconstitutional. In fact, in *Brown*, the supreme court noted that *Cervantes* did not affect the "statutory provisions defining the criminal offenses" with which the defendant was charged or the attempted murder charge for which he was convicted in that case. *Brown*, 225 Ill. 2d at 203. Given the foregoing, this court cannot provide Smith the effectual relief that he seeks.

¶ 39    Lastly, we note that Smith asserts that, if this court finds that a new transfer hearing before the juvenile court is impracticable, then we should fashion an appropriate alternate remedy. Smith does not suggest what an appropriate remedy would be, and the case law does not provide for one. Citing *People v. Fort*, 2017 IL 118966, Smith argues that we may remand for proceedings in criminal court to determine if his transfer would have been appropriate under the version of the Act in effect before Public Act 88-680 was enacted. We find *Fort* distinguishable.

¶ 40    In *Fort*, the 16-year-old defendant was transferred to criminal court pursuant to the "automatic transfer" provision of the Act and was subsequently convicted there of second degree murder, which was an uncharged offense not subject to automatic transfer to criminal court. 2017 IL 118966, ¶¶ 3-4, 24. The trial court sentenced the defendant as an adult even though the

defendant was a minor and the State did not file a motion requesting adult sentencing as required by the Act. *Id.* ¶¶ 13, 30-31. Our supreme court found that the court erred when it sentenced him as an adult without the State's request for adult sentencing. *Id.* ¶¶ 31, 41. The supreme court remanded the case to the trial court with directions to vacate the defendant's sentence and to permit the State to file a motion requesting adult sentencing. *Id.* ¶ 41. The supreme court stated that, "[s]hould the trial court find after the hearing that defendant is not subject to adult sentencing, the proper remedy is to discharge the proceedings against defendant since he is now over 21 years of age and is no longer eligible to be committed as a juvenile under the Act." *Id.*

¶ 41    Unlike *Fort*, where the supreme court remanded the case to adult criminal court to allow the State to file a petition in criminal court requesting adult sentencing, here, Smith is requesting we remand his case for a new transfer hearing under the version of the Act that was in effect before Public Act 88-680 was enacted. See *Hunter*, 2017 IL 121306, ¶ 41 (distinguishing *Fort* and stating "where the case was remanded to adult court to allow the State to file a motion in that court requesting adult sentencing [the defendant] seeks remand for a discretionary transfer hearing, which, he acknowledges, proceeds in the juvenile court"). However, under the Act, a transfer hearing proceeds before a judge in the juvenile court, not the adult criminal court. See *id.*; 705 ILCS 405/5-4 (West 1994)). And, as we have previously discussed, the juvenile court does not have authority over Smith. See *Hunter*, 2017 IL 121306, ¶¶ 38-42; *Foxx*, 2018 IL App (1st) 162345, ¶ 45.

¶ 42                                  III. CONCLUSION

¶ 43    For the foregoing reasons, we affirm the circuit court's judgment.

¶ 44    Affirmed.

¶ 45    PRESIDING JUSTICE MIKVA, dissenting:

¶ 46 The majority recognizes that because the version of the transfer statute applied here was held unconstitutionally void in *Cervantes*, 189 Ill. 2d at 98, the transfer of Mr. Smith's case from juvenile court to adult criminal court was a void transfer. *Supra* ¶ 34 (citing *Brown*, 225 Ill. 2d at 198-99). Our supreme court made clear in *Brown* that under these precise circumstances, a defendant "is entitled" to a new transfer hearing under the prior version of the transfer statue. *Brown*, 225 Ill. 2d at 199-200, 202. If, following such a hearing, the court concludes that a discretionary transfer from juvenile court to adult criminal court would have been warranted, the conviction remains in place, since there can be no argument that the defendant's criminal conviction is void. *Id.* at 203. If, however, the court concludes that a discretionary transfer would *not* have been warranted, then the defendant's original conviction in adult criminal court "*cannot be allowed to stand.*" (Emphasis added.) *Id.* at 202. The holding and remedy in *Brown* would appear to control the outcome of this case.

¶ 47 Citing comments made by our supreme court some years later in *Hunter*, 2017 IL 121306, however, the majority concludes that *Brown* no longer controls, that since Mr. Smith is no longer a minor, "a new transfer hearing is not 'practicable,' " and Mr. Smith's conviction must simply be allowed to stand. *Supra* ¶¶ 30, 36-41. I respectfully dissent, as this conclusion is plainly at odds with the holding in *Brown*, a result that could only be proper if *Hunter* had overruled *Brown*.

¶ 48 Nothing in the *Hunter* decision suggests that it overruled *Brown*. In fact, and importantly, the question before the court in *Hunter* was quite different than the question before the court in *Brown*. The court in *Hunter* was wrestling with whether two amendments to the Juvenile Court Act should be applied retroactively to a case on direct appeal. *Hunter*, 2017 IL 121306, ¶ 1. In that context, the court consulted section 4 of the Statute on Statutes (5 ILCS 70/4

(West 2022)) and focused in significant part on the fact that it provides that a criminal defendant may receive the benefit of a procedural amendment, "so far as practicable." *Id.* ¶¶ 37-43. If retroactive application of a statutory amendment is not practicable, then the defendant does not receive the benefit, and the status quo prevails. *Id.* The core holding in *Brown*, however, is that where, as here, a conviction is the result of a void transfer, the status quo *cannot* prevail. *Brown*, 225 Ill. 2d at 202.

¶ 49      As the majority correctly notes, the transfer statute provides—and has provided, in each of the versions discussed here—for discretionary transfer hearings to be conducted by judges of the juvenile court (705 ILCS 405/5-4 (West 1994)). In the normal progression of a case, where a defendant is still a juvenile when that determination is made, the juvenile court is clearly the proper forum. This is not, however, as certain unfortunate language in *Hunter* suggests (see, *e.g.*, *Hunter*, 2017 IL 121306, ¶¶ 41-43), a matter of "jurisdiction," but rather one of specific statutory authority.

¶ 50      Jurisdiction is "conferred by the constitution, not the legislature." (Internal quotation marks omitted.) *People v. Castleberry*, 2015 IL 116916, ¶ 15. And a circuit court, of which the juvenile court is but one division, "is a court of general jurisdiction, which need not look to [a] statute for its jurisdictional authority." (Internal quotation marks omitted.) *Id.* ¶ 19. It is precisely because a transfer between the juvenile and criminal courts represents a mere change of forum (*People ex rel. Alvarez v. Howard*, 2016 IL 120729, ¶ 15) and is viewed as "purely a matter of procedure" (*Patterson*, 2014 IL 115102, ¶ 104) that amendments to the transfer statute have, where practicable, been applied retroactively. See *Howard*, 2016 IL 120729, ¶ 35 (amendment altering the list of offenses qualifying for automatic transfer); *People v. Price*, 2018 IL App (1st) 161202, ¶ 22 (amendment raising the minimum age for automatic transfer).

¶ 51     If, as the majority concludes, the juvenile court "no longer has authority" to conduct a transfer hearing (*supra* ¶ 38), there is no jurisdictional bar to having that hearing occur in criminal court. Indeed, it appears to us that this is what the *Brown* court understood would happen when it remanded that case back to the criminal court from which the appeal in that case was taken. Our own research into the electronic docket indicates that, once back before the criminal court, that court transferred Mr. Brown's case to the juvenile court for a discretionary transfer hearing (Case Summary, Case No. 98 CR 0657901, available at https://cccportal.cookcountyclerk ofcourt.org (last visited May 15, 2025)). However, nothing in the supreme court's opinion in *Brown* indicates that that was what the court specifically intended. The case was appealed from the criminal court, and, in affirming in part the appellate court's decision to vacate the defendant's conviction and remand for a new transfer hearing, our supreme court simply "remanded to the circuit court for further proceedings." *Brown*, 225 Ill. 2d at 208. Our supreme court in *Brown* was far less concerned with what division of the circuit court would hear the matter than it was with the fact that, because his transfer order was void, Mr. Brown "*must* therefore be granted a new transfer hearing." (Emphasis added.) *Id.* at 199.

¶ 52     Here, Mr. Smith has specifically asked this court, should we conclude that a remand to the juvenile court is not possible, to fashion an appropriate remedy addressing his void transfer. That remedy is a remand to the adult criminal court for a discretionary transfer hearing under the version of the transfer statute preceding the one held unconstitutional in *Cervantes*. It is a remedy that is both required by *Brown* and still consistent with *Hunter*. It is also one within our power to provide under section 2-1401, which empowers courts with "a versatile and effective means of pursuing justice," a goal our supreme court has reminded us is our "highest obligation." *People v. Lawton*, 212 Ill. 2d 285, 299 (2004).

¶ 53        Accordingly, I respectfully dissent.